AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue
Washington, D.C. 20036
(202) 872-4000
Cheryl A. Falvey (CA-2074)
Thomas P. McLish
Troy D. Cahill
*Attorneys for Defendant Wendy's International, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM JERNOW, on behalf of himself and all others similarly situated,<br><br>           Plaintiffs,<br><br><br>    -against -<br><br>WENDY'S INTERNATIONAL, INC.,<br><br>           Defendant. | Case No. 07-Civ-3971 (LTS) (THK)<br><br>Hon. Laura Taylor Swain |

**WENDY'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

PRELIMINARY STATEMENT ....................................................................................... 1

FACTS ............................................................................................................................... 2

ARGUMENT ..................................................................................................................... 4

I.   STANDARD FOR MOTION TO DISMISS ............................................................. 4

II.  JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION
     FOR DECEPTIVE SALES PRACTICES UNDER N.Y. GEN. BUS. § 349............... 5

     A.  Jernow Has Failed To Sufficiently Allege The Requisite Actual Injury .......... 5

     B.  Jernow Has Not Sufficiently Alleged Causation Or, Alternatively, The
         Amended Complaint Fails To Adequately Allege Any Actionable
         Misrepresentation............................................................................................... 9

III. JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION
     FOR BREACH OF IMPLIED-IN-FACT CONTRACT............................................ 13

     A.  The Amended Complaint Does Not Allege Facts To Support A Conclusion
         That The Alleged Contract Is Supported By Mutual Assent .......................... 14

     B.  The Terms Of The Alleged Contract Are Impermissibly Indefinite............... 17

     C.  The Amended Complaint Fails To Allege A Breach Of The Contract
         Conceived By Jernow ..................................................................................... 18

     D.  The Amended Complaint Does Not Adequately Allege Damage To Jernow  19

IV.  JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
     UNJUST ENRICHMENT ......................................................................................... 20

CONCLUSION............................................................................................................... 22

Defendant Wendy's International, Inc. ("Wendy's"), by and through undersigned counsel, hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the amended complaint ("Amended Complaint") filed by Plaintiff Adam Jernow ("Jernow") in this action.

## PRELIMINARY STATEMENT

Wendy's is an industry leader in making nutritional information available to customers. Wendy's policy is to provide its customers with all of the nutritional information they need to make accurate, informed choices concerning their diets. To that end, Wendy's voluntarily provides extensive nutritional information to its customers via a variety of media, including in-store nutritional posters. Indeed, Wendy's consumer education efforts exceed those of the vast majority of American restaurants.

Jernow's Amended Complaint fails to state a cause of action based on Wendy's representations about the level of trans fats in Wendy's food products. Jernow fails to allege a claim under N.Y. Gen. Bus. § 349 because he fails to adequately allege (1) that he was deceived, (2) that he suffered any actionable harm, or (3) the requisite causal connection between the alleged misrepresentation and any harm to himself. Jernow also fails to allege a breach of implied-in-fact contract claim for a host of reasons – (1) the alleged contract lacks mutual assent, (2) the terms of the alleged contract are not clear and definite, and (3) Jernow fails to allege a breach even if the alleged implied-in-fact contract existed. Jernow's attempt to assert a claim for unjust enrichment is also unsuccessful because (1) Wendy's had no obligation to provide Jernow with foods that were trans fat free or containing nominal amounts of trans fats, and (2) the unjust enrichment claim is simply a reformulation of the claim for deceptive trade practices. The Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1

## FACTS

According to the Amended Complaint,[1] in 2006, Wendy's engaged in a nationwide marketing campaign asserting that it was significantly reducing trans fats in its food products. Amended Complaint ("Amended Compl.") at ¶ 13. In a June 8, 2006 press release, Wendy's announced that it was switching to non-hydrogenated cooking oil for its French fries and breaded chicken items. The press release stated that rigorous testing indicated that the switch in cooking oils reduced the level of trans fats in Wendy's breaded chicken products to 0 grams of trans fats per serving and in Wendy's French fries to, depending on serving size, 0 to 0.5 grams of trans fats per serving. *Id.* Also as part of the nationwide campaign, Wendy's revised some of its packaging to reflect that its cooking oil contained 0 grams of trans fat. *Id.* at ¶ 14.

Wendy's voluntarily provides nutritional information to its customers via, among other means, nutritional information displays at the point of purchase in each of its stores. *Id.* at ¶ 15. The nutritional display plainly and conspicuously states:

> The nutrition information contained on this poster is based on standard U.S. product formulations. Variations may occur due to the differences in suppliers, ingredient substitutions, recipe revisions, product assembly at the restaurant, and/or the season of the year. . . . Wendy's calculations follow the federal regulations regarding the rounding of nutritional data.

---

[1] For purposes of this motion, the allegations in the Amended Complaint are taken as true. In determining the adequacy of the complaint, the court is free to consider any written instrument attached to the complaint as an exhibit or any document quoted in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

(emphasis added).  A copy of the nutritional display poster which is referenced, quoted, and relied upon by the Amended Complaint is attached to the Notice of Motion to Dismiss as Exhibit ("Ex.") A.[2]

In November 2006, Consumer Reports published a brief item that concluded that the level of trans fats in certain Wendy's food products was higher than represented by Wendy's.  Amended Compl. at ¶ 16.  A copy of the Consumer Reports article which is referenced, quoted, and relied upon by the Amended Complaint is attached to the Notice of Motion to Dismiss as Ex. B.  The Consumer Reports article was based upon purchases made at three Wendy's restaurants in Westchester County, New York during early September 2006.  *See* Ex. B.  The Consumer Reports article acknowledged that nutritional experts recognize that a daily intake of 20 grams of trans fat and saturated fat is acceptable on a standard 2,000-calorie diet.  *Id.*

On February 9, 2007, Jernow or his counsel purchased a small size order of Wendy's French fries at an unidentified location and had them tested by an unidentified laboratory.  Amended Compl. at ¶ 17.  Jernow asserts that the testing determined that the purchased French fries contained 1.3 grams of trans fat per serving.  *Id.*  Jernow makes no allegations about the actual trans fat content of any Wendy's chicken product.  The Amended Complaint also does not allege the nutritional profile of any Wendy's food actually consumed by Jernow.  Moreover, the Amended Complaint does not allege any facts to support a finding that Jernow incurred any injury, whether economic or otherwise, attributable to his purchase of Wendy's food products.

---

[2] The nutritional display poster as attached is in reduced format in order to accommodate standard paper size.  The actual size of the poster in store is approximately 30 inches high by 18 inches wide.  A copy can be made available to the court upon request.

Jernow's original complaint was filed on May 22, 2007 and set forth three causes of action – deceptive sales practices in violation of N.Y. Gen. Bus. § 349, breach of implied-in-fact contract, and unjust enrichment. The original complaint was bereft of any factual allegations regarding physical or economic harm incurred by Jernow. Instead, the original complaint merely stated that Jernow and others had purchased Wendy's food products believing them to be trans fat free or containing only nominal amounts of trans fat. Compl. at ¶¶ 7 and 29.

On June 20, 2007, Jernow filed this Amended Complaint against Wendy's, alleging that Wendy's misled Jernow about the level of trans fats in Wendy's food products. *See* Amended Compl. at ¶ 1. The Amended Complaint adds a conclusory allegation that Jernow paid a premium for the food he purchased, *Id.* at ¶ 7, an assertion that Wendy's is able to charge a premium over its competitors because it represents that it serves healthy, quality food, and a reference to an article published four years prior to the relevant events. *Id.* at ¶ 12.

## ARGUMENT

## I.    STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In weighing a motion to dismiss, the Court must "accept as true all of the factual allegations in the complaint." *Erickson v. Pardue*, 551 U.S. __, 127 S. Ct. 2197, 2200 (2007); *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). Recently, the Supreme Court clarified what a complaint must allege in order to satisfy Rule 12(b)(6). It is now established that, to survive a motion to dismiss, a plaintiff must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

4

____, 127 S. Ct. 1955, 1964-65 (2007).  A formulaic recitation of a cause of action's elements will not suffice.  *Id.*  The Court rejected a literal reading of the statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Rather, to withstand a motion to dismiss, the factual allegations of the complaint must be enough to show, rather than simply assert, an entitlement to relief.  *Id.* at 1965 n.3 (noting that Rule 8(a) contemplates the statement of circumstances, occurrences, and events in support of the claims presented).

## II.    JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR DECEPTIVE SALES PRACTICES UNDER N.Y. GEN. BUS. § 349

To state a claim for deceptive sales practices under N.Y. Gen. Bus. § 349, a plaintiff must allege facts sufficient to establish that the defendant has engaged:  (1) in an act or practice that is consumer oriented; (2) that is deceptive or misleading in a material way; and (3) that directly caused an actual injury to plaintiff.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 720 N.E.2d 892, 897 (N.Y. 1999).  The burden is on a plaintiff to show materially deceptive conduct which caused the injury.  *Gale v. Int'l Business Machines Corp.*, 781 N.Y.S.2d 45, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004).

### A.    Jernow Has Failed To Sufficiently Allege The Requisite Actual Injury

Proof that a material deceptive act or practice caused actual injury is required in order to obtain relief under § 349.  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410 (S.D.N.Y. 2004) (dismissing § 349 claim where plaintiff failed to allege facts establishing actual injury).  Jernow alleges in conclusory fashion that he was injured because he "unknowingly ingested foods that contained unsafe amounts of trans-fats."

Amended Compl. at ¶ 30; *see also* ¶ 7 (alleging that "[Jernow] suffered injury in that [he] would not have bought the French fries and fried chicken products nor paid a premium for them had the true amount of trans-fats been disclosed.").

With regard to Jernow's claim that he was "injured" by the fact that he bought the French fries and chicken products, it is well-established that there is no violation of § 349 where the plaintiffs' only alleged harm is that they were deceived into purchasing a product they otherwise would not have purchased. *Small*, 720 N.E.2d at 897 (affirming the dismissal of a § 349 claim where the plaintiffs alleged that the defendants employed deceptive practices to sell cigarettes). To state a claim, plaintiffs must allege that they suffered an actual physical or economic injury, not simply that they were misled.

In *Small*, the New York Court of Appeals affirmed the dismissal of a § 349 claim for failure to plead actual injury. The plaintiffs claimed that misrepresentations by cigarette manufacturers prevented them from making free and informed choices whether to purchase cigarettes. *Small*, 720 N.E.2d at 898. The plaintiffs took the position that "consumers who buy a product that they would not have purchased absent a manufacturer's deceptive commercial practices" have suffered an injury under § 349. *Id.* The Court of Appeals disagreed and stated:

> Plaintiffs' definition of injury is legally flawed. Their theory contains no manifestation of either pecuniary or "actual" harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction. Indeed, they chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes. Plaintiffs' cause of action under this statute, as redefined by the trial court and as embraced by them, thus sets forth deception as both act and injury.

*Id.* The Court of Appeals rejected the plaintiffs' "deception as injury" theory and affirmed the dismissal of the plaintiffs' claims under § 349. *Id.*

Similarly, in *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 186, 778 N.Y.S.2d 9, 11 (N.Y. App. Div. 2004), the Appellate Division affirmed the dismissal of a plaintiff's § 349 claim against her health club because the plaintiff, like Jernow, impermissibly alleged deception as both act and injury. In dismissing the plaintiff's § 349 claim, the Appellate Division held that the plaintiff did "not claim any kind of monetary loss other than payment of her membership fees, d[id] not claim that defendant failed to deliver the services called for in the contract, never sought to cancel the contract, remain[ed] a member of defendant's health club and continue[d] to pay defendant's monthly membership fees without objection." *Id*.

Other federal courts have also held that the alleged deception and the alleged injury must be separate in order to state a claim under § 349. *Reyes v. McDonald's Corp.*, 2006 WL 3253579, slip op. at *2 (N.D. Ill. 2006), like this case, involved an alleged misrepresentation regarding the trans fatty acid content of McDonald's French fries. According to the *Reyes* plaintiff, McDonald's violated § 349 by "'fraudulently inducing consumers to purchase its french fries.'" *Id.* (quoting Amended Compl.). Because the plaintiff, like Jernow, failed to allege any injury separate and apart from the alleged deception, the court dismissed the § 349 claim. *Id.*

Just like plaintiffs in *Small*, *Sokoloff*, and *Reyes*, Jernow impermissibly alleges that the alleged deception is both act and injury. As such, he fails to plead a legally cognizable injury and his § 349 claim should be dismissed.[3]

---

[3] To the extent Jernow's claim of deceptive sales practices also rests on representations relating to fried chicken products, it must be dismissed because the Amended Complaint is devoid of any facts regarding the purported level of trans fats in Wendy's fried chicken products.

Jernow's original complaint alleged only that Jernow and others had purchased Wendy's food products believing them to be trans fat free or containing only nominal amounts of trans fat. Compl. at ¶¶ 7 and 29. Belatedly recognizing that such allegations were completely inadequate to survive a motion to dismiss in light of decisions such as *Small*, *Sokoloff*, and *Reyes*, Jernow attempts to salvage his claim by amending his complaint to add a conclusory allegation that, "[b]ecause of its representations that it serves quality, healthy food, Wendy's is able to charge customers a premium for its food compared to the prices set by its competitors." Amended Compl. at ¶ 7. He does not allege that Wendy's representations regarding trans fat levels in its French fries and chicken products resulted in Wendy's charging a premium.[4] Indeed, the only support Jernow offers for his allegation that Wendy's charges a premium at all is a bare reference to an article that appeared on www.Forbes.com on January 15, 2002 – <u>more</u> <u>than</u> <u>four</u> <u>years</u> <u>before</u> <u>the</u> <u>events</u> <u>in</u> <u>question</u>. *See* Amended Compl. at ¶ 12. A copy of the Forbes article which is referenced, quoted, and relied upon by the Amended Complaint is attached to the Notice of Motion to Dismiss as Ex. C. In addition to being temporally irrelevant to Jernow's claims, the article says nothing at all about the effect of trans fats on food pricing and, in fact, says nothing about trans fats at all. Instead, the article contains an overview of Wendy's business prospects in the aftermath of the passing of Wendy's founder Dave Thomas on January 8, 2002.

---

[4] *Small* does not decide whether allegations of an inflated price are sufficient to allow a § 349 claim to survive a Rule 12(b)(6) motion because that particular "injury" was not alleged in that case. It would, however, be incongruous to hold that a claim under § 349 is insufficient where the plaintiff seeks recoupment of the entire purchase price but sufficient where that same plaintiff seeks recoupment of only a portion of the purchase price. In both instances, the plaintiff is merely setting forth deception as both act and injury.

Even if the article could be interpreted to support an allegation that representations regarding food quality may have a theoretical impact on price, that theoretical possibility is insufficient to establish <u>actual</u> injury. The Forbes article itself indicates that representations about food quality can be used to drive up <u>sales</u> – *i.e.*, higher demand for a product can be met with increased supply (sales) rather than a price increase. Jernow does not allege that Wendy's chose to raise its prices rather than increase supply in connection with the alleged trans fat claims. In the absence of a non-conclusory, factual allegation that Wendy's <u>in fact</u> charged, and Jernow <u>in fact</u> paid, a premium based on Wendy's representations regarding trans fats, Jernow clearly has not alleged sufficient facts to establish the required actual injury. This was true prior to the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly* and is even more apt in its aftermath. *See Twombly*, 550 U.S. at ____, 127 S. Ct. at 1964-65 (to survive a motion to dismiss, a plaintiff must provide more than conclusions and formulaic recitations of the elements of a cause of action).

For all these reasons, *Small* and its progeny, in conjunction with the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, dictate that the Amended Complaint is insufficient as a matter of law to support a claim under § 349.

**B.      Jernow Has Not Sufficiently Alleged Causation Or, Alternatively, The Amended Complaint Fails To Adequately Allege Any Actionable Misrepresentation**

In order to state a claim under § 349, a plaintiff must show that the defendant's material deceptive act caused the injury. *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 612 (N.Y. 2000); *Gale v. Int'l Business Machines Corp.*, 781 N.Y.S.2d 45, 46-47, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004). The court in *Stutman* used the facts

of that case to illustrate the difference between causation, which is a required element, and reliance, which is not:

> Here, plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required.  In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss.  This allegation satisfies the causation requirement.  Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.

*Id.* at 612-3.

In this case, the Amended Complaint is devoid of any allegations or facts to support a conclusion that Jernow suffered <u>any</u> injury, pecuniary or otherwise, as a result of the alleged false representations.  Moreover, Jernow fails to allege that he had <u>any</u> pre-purchase awareness of Wendy's alleged representations about trans fats.  Under *Gale* and *Stutman*, Jernow has failed to allege sufficient facts to show that Wendy's representations or his consumption of Wendy's food products caused him any injuries, directly or indirectly.  Accordingly, the § 349 claim is insufficient as a matter of law and should be dismissed.  *See Gale*, 781 N.Y.S.2d at 46-47, 9 A.D.3d at 447 (affirming the dismissal of a § 349 claim because without factual allegations evincing the plaintiff's awareness of the alleged misrepresentation, the alleged misrepresentation lacked the requisite causal nexus to the plaintiff's alleged injury to support a claim under § 349).

The Second Circuit's decision in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) (commonly referred to as *Pelman III*), supports this conclusion.  In *Pelman*, the district court dismissed the § 349 claim due to the plaintiffs' failure to draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries.  *Pelman III*, 396 F.3d at 511-12.  The district court found it fatal that the

10

plaintiffs had not asserted allegations sufficient to determine whether the foods at issue

were the cause of the plaintiffs' injuries, as opposed to simply a contributing factor. *Id.*

On appeal, the Second Circuit reversed the district court and held that the complaint, in

alleging that the plaintiffs chose to eat McDonald's food as a result of alleged deceptive

practices and, as a result of the consumption of McDonald's food, developed detrimental

health effects, was sufficient to survive a motion under Rule 12(b)(6). *Id.* at 512. Unlike

the plaintiffs in *Pelman*, however, Jernow does not provide any allegations regarding the

causal effect of the alleged misrepresentations on his decision to eat at Wendy's or the

causal effect of any of the alleged misrepresentations in terms of specific injury,

pecuniary or otherwise. Thus, whether viewed through the lens of *Stutman*, *Gale*, or

*Pelman III*, Jernow's Amended Complaint fails to state a claim under § 349.

　　　　Even if Jernow adequately alleged causation, in order to avoid dismissal of his

claim for deceptive sales practices under § 349 he must also allege sufficient facts to

support a conclusion that a reasonable consumer would be deceived or misled by the

alleged act or practice. *See Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 745 (N.Y. 1995). Under the law

of New York, a court is empowered to decide, as a matter of law, whether a particular

representation is deceptive for purposes of § 349. *Id.*

　　　　Jernow claims that he, and others similarly situated, purchased Wendy's food

products believing them to be trans fat free or containing only nominal amounts of trans

fat. Amended Compl. at ¶ 30. Yet, Jernow knew or should have known of the potential

for variations in the nutritional content of Wendy's French food, including trans fat

levels, as demonstrated by the allegations of the Amended Complaint and the documents

relied on therein.  In fact, Jernow was expressly warned that the level of trans fat in

Wendy's food products could vary.  *See* Ex. A referenced at ¶ 15 of the Amended Compl.

Moreover, at the time of Jernow's only alleged purchase of Wendy's food in February

2007, the Consumer Reports article had already disclosed the issues relating to the level

of trans fat in Wendy's food products.  *See* Ex. B referenced at ¶ 16 of the Amended

Compl.  For these reasons, Jernow has not pled and cannot plead any set of facts to

establish that he or any reasonable consumer acting reasonably under the circumstances

alleged in the Amended Complaint would have been deceived regarding the alleged trans

fats content of Wendy's food products.

The Second Circuit's decision in *S.Q.K.F.C. v. Bell Atlantic Tricon Leasing

Corp.*, 84 F.3d 629 (2d Cir. 1996), is instructive.  In *S.Q.K.F.C.*, a potential borrower

brought suit against a would-be lender, alleging that the lender had violated § 349

because one of the lender's employees had falsely told the borrower that a proposed loan

could be obtained without any individual guarantees.  *Id.* at 636-37.  In affirming the

dismissal of the borrower's § 349 claim, the Second Circuit noted that the lender

followed his initial statement that no guaranties would be required with written

correspondence making it clear that guaranties might be required.  *Id.*  For this reason, the

Second Circuit held that "[i]n the presence of these clear disclaimers, a reasonable

consumer would not have been misled by [the lender's] oral representation."  *Id.*

Like the allegations at issue in *S.Q.K.F.C.*, the allegations in Jernow's Amended

Complaint show that based upon the disclaimer set forth on the nutritional information

poster and the Consumer Reports article, a reasonable consumer in Jernow's position

would not have been deceived by any representation attributed to Wendy's by the

Amended Complaint.  For this reason, Jernow's § 349 claim should be dismissed.  *See*

*Time Warner Cable, Inc. v. DirectTV, Inc.*, 2007 WL 1138879, slip op. at * 4 (S.D.N.Y.

April 16, 2007) (noting that a representation should be considered as a whole and

denying injunctive relief where a disclaimer remedied the alleged misleading nature of a

pricing representation); *see also Cohen v. Nassau Educators Federal Credit Union*, 819

N.Y.S.2d 209, 2006 WL 1540324, slip op. at *4 (N.Y. Sup. Ct. May 10, 2006) (noting

that one cannot claim to have been misled when the alleged misrepresentations consist of

material that could have been discovered through the exercise of due diligence and

dismissing § 349 claim where the plaintiff's allegations and related documentary

evidence showed that the plaintiff had full information about or access to full information

relating to the alleged deceptive practices); *Bello v. New England Financial*, 3 Misc. 2d

1109(A), 787 N.Y.S.2d 676 (N.Y. Sup. Ct. 2004) (same).

For all these reasons, the Amended Complaint fails to state a claim for deceptive

sales practices under N.Y. Gen. Bus. § 349.

## III.    JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR BREACH OF IMPLIED-IN-FACT CONTRACT

Jernow contends that he "entered into an implied-in-fact contract with Wendy's

for the purchase of French fries and fried chicken products that were trans fat free or

contained only nominal amounts of trans-fats."  Amended Compl. at ¶ 34.  Jernow further

asserts that Wendy's breached its obligations under the implied-in-fact contract "by

knowingly failing to provide plaintiff, and those similarly situated, with the products they

desired, paid consideration for, and thought that they were receiving."  *Id.* at ¶ 36.  None

of these allegations establish the existence of any contract or its breach.

While an enforceable implied-in-fact contract may be inferred from the conduct of the parties, *Jemzura v. Jemzura,* 369 N.Y.S.2d 400, 408, 330 N.E.2d 414, 420 (N.Y. 1975), "in order to infer the existence of a contract from the actions of the parties it must appear that they actually intended to form a contract." *Matter of Estate of Argersinger,* 168 A.D.2d 757, 758, 564 N.Y.S.2d 214 (App. Div. 1990). Although the intent to commit to an agreement may be inferred from the conduct of a party, an enforceable implied-in-fact contract still requires the elements of, among other things, mutual assent and definiteness. *Maas v. Cornell University,* 699 N.Y.S.2d 716, 720, 721 N.E.2d 966, 970 (N.Y. 1999). The burden rests upon the party seeking to enforce the contract to prove the existence and validity of such contract, as well as its terms. *Matter of Estate of Argersinger*, 168 A.D.2d at 758, 564 N.Y.S.2d at 215.

A. **The Amended Complaint Does Not Allege Facts To Support A Conclusion That The Alleged Contract Is Supported By Mutual Assent**

The Amended Complaint fails to allege facts to support a finding that Wendy's made a binding "offer" to sell Jernow food products that were trans fat free or contained only nominal amounts of trans fat, which Jernow could "accept" by purchasing food at Wendy's. Accordingly, no implied-in-fact contract arose.

An implied-in-fact contract requires assent to the terms of the alleged contract by the person to be charged with breach of the implied contract. *See Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F. Supp. 2d 265, 286 (S.D.N.Y. 2001) (dismissing claim for breach of implied-in-fact contract where the complaint failed to allege conduct that would indicate the presence of mutual assent). Moreover, a contract cannot be implied where the facts are inconsistent with its existence. *Tjoa v. Julia Butterfield Memorial Hospital*, 205 A.D.2d 526, 526, 612 N.Y.S.2d 676, 677 (App. Div. 1994). Jernow's contention that

14

an implied-in-fact contract existed in this case is without merit as a matter of law. As an initial matter, the Amended Complaint fails to provide any basis to support the implication of any promise on the part of Wendy's to provide food products that were trans fat free or only contained "nominal" amounts of trans fat. Moreover, the allegations of the Amended Complaint are inconsistent with the existence of a contract to sell foods that were trans fat free or only contained "nominal" amounts of trans fats.

The press release cited by Jernow and, apparently, relied upon by Jernow as the basis for his breach of contract claim is, as a matter of law, not an "offer" to contract to sell foods that were trans fat free or only contained unvarying nominal amounts of trans fats. Courts have long and consistently rejected efforts to convert general public solicitations into binding "offers" with contractual consequences.

For example, in *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 118-19 (S.D.N.Y. 1999), the court considered a Pepsi advertising campaign that purported to offer a Harrier Jet for the accumulation of a seemingly impossible number of "Pepsi points." When a plaintiff sought to accept the alleged offer and Pepsi refused to provide a jet, the court rejected a claim similar to that which is advanced by Jernow here. Applying the settled contract principles of the Restatement (Second) of Contracts § 26, the court ruled that general public solicitations are "not ordinarily intended or understood as offers." *Id.* at 122; *see also Geismar v. Abraham & Strauss*, 109 Misc. 2d 495, 495, 439 N.Y.S.2d 1005, 1006 (N.Y. Dist. Ct. 1981) (advertisements are "nothing but an invitation to enter into negotiations, and [are] not an offer which may be turned into a contract by a person who signifies his intention to purchase some of the articles mentioned in the advertisement").

Because they are general public solicitations, neither the June 8, 2006 press release nor the nutritional information display relied upon by Jernow embody a binding "offer" to contract to sell foods that were trans fat free or only contained "nominal" amounts of trans fats.  Instead, they are simply invitations to enter into negotiations.  Moreover, the nutritional information display, which Jernow admits is displayed prominently at the point of purchase, *see* Amended Compl. at ¶ 15, plainly contradicts the existence of the alleged contract because it states expressly that:

> The nutrition information contained on this poster is based on standard U.S. product formulations.  <u>Variations</u> <u>may</u> <u>occur</u> due to the differences in suppliers, ingredient substitutions, recipe revisions, product assembly at the restaurant, and/or the season of the year. . . . Wendy's calculations follow the federal regulations regarding the rounding of nutritional data.

(emphasis added).  For these reasons, no reasonable person would conclude that Wendy's intended to enter into or assented to a binding agreement to sell food products that were trans fat free or only contained "nominal" amounts of trans fat.  *See Scott v. Bell Atlantic Corp.*, 282 A.D.2d 180, 185, 726 N.Y.S.2d 60, 64 (N.Y. App. Div. 2001) (dismissing breach of contract claim where no reasonably prudent consumer would rely on certain representations in the face of conspicuous and unequivocal disclamations concerning the quality or characteristics of the service or product); *see also Maas v. Cornell University*, 94 N.Y.2d at 93-94, 721 N.E.2d at 969-70 (affirming the dismissal of a breach of implied-in-fact contract where there was no evidence to support a finding that the defendant assented to the Campus Code being part of the employment contract and the Campus Code specifically stated that it could be altered at any time).[5]

---

[5] The mere fact that Wendy's sold Jernow food is insufficient to support a finding that the parties had reached an agreement on the alleged contract.  *See Teachers Ins. & Annuity*

### B.    The Terms Of The Alleged Contract Are Impermissibly Indefinite

Jernow's breach of contract claim also fails under the doctrine of definiteness, which provides that "a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to." *In re 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687 (N.Y. 1991). "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 923 (N.Y. 1989). Where the facts are inconsistent with a finding that the parties agreed to the specific terms of the contract to which they would be bound, no implied contract may be found to exist. *Lubeck Realty, Inc. v. Flintkote Co.,* 170 A.D.2d 800, 802-03, 565 N.Y.S.2d 922, 924 (N.Y. App. Div. 1991).

Here, Jernow alleges that Wendy's promised to sell foods that were trans fat free or only contained nominal amounts of trans fats. Amended Compl. at ¶ 34. The term "nominal" is not defined or sufficiently precise in this context (nutritional data relating to trans fats) to demonstrate a meeting of the minds on that term. Moreover, Jernow's assertion concerning Wendy's alleged promise is flatly contradicted by the allegations of the Amended Complaint. The nutritional displays referred to and incorporated by Jernow's Amended Complaint, *see* Amended Compl. at ¶ 15, make clear that "variations may occur" in the nutritional profile of Wendy's food products.

In short, the Amended Complaint fails to allege sufficient facts – indeed the Amended Complaint is bereft of <u>any</u> factual allegations – to support a finding of "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in

---

*Ass'n of Am.,* 670 F. Supp. 491, 502 (S.D.N.Y. 1987) (partial performance does not necessarily imply mutual assent as "[a] party may make some partial performance merely to further the likelihood of consummation of a transaction it considers advantageous.").

agreement with respect to all material terms" of the purported implied-in-fact contract, including what amounts of trans fat would be deemed "nominal." *Express Indus. Terminal Corp. v. N. Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857, 860 (N.Y. 1999) ("[D]efiniteness as to material matters is of the very essence of contract law."); *see also Brookhaven Hous. Coalition v. Solomon,* 583 F.2d 584, 593 (2d Cir. 1978) (affirming motion to dismiss contract claim; "If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result").

### C.    The Amended Complaint Fails To Allege A Breach Of The Contract Conceived By Jernow

Apart from its other fatal defects, the Amended Complaint fails to allege a breach of the implied contract as defined by Jernow.  According to Jernow, in return for his payment of the purchase price, Wendy's promised to sell Jernow foods that were trans fat free or only contained nominal amounts of trans fats.  Amended Compl. at ¶ 34. Jernow's Amended Complaint, however, lacks any factual allegations or evidence relating to the nutritional profile, including the level of trans fat, of any food <u>actually</u> purchased and consumed by Jernow.[6]  In the lone instance in which Jernow's Amended Complaint sets forth the trans fat profile of any Wendy's food product, the Amended Complaint does not allege that Jernow ate that food, or even that he purchased it. Amended Compl. at ¶ 17.  Thus, despite seeking an award of damages for breach of an alleged contract, Jernow fails to provide any factual allegations showing that he indeed purchased and consumed Wendy's food that contained an inflated amount of trans fat.

---

[6] Jernow, a resident of New York County, does not allege that he made any purchases at the Westchester County restaurants that were the subject of the Consumer Reports study he cites.  *See* Ex. B.

Even if the purchase described in the Amended Complaint was made by Jernow, the nutritional test results of that alleged purchase disclose that the French fries contained 1.3 grams of trans fat per serving (a mere .8 grams more than the .5 grams that Jernow claims was allowed under the alleged contract). Given that the Consumer Reports study cited and relied upon by Jernow notes that nutrition experts identify a daily intake of 20 grams of trans fat and saturated fat as acceptable on a standard 2,000-calorie diet, the 1.3 grams contained in the French fries allegedly purchased by Jernow is, under any definition of the word, nominal. As such, the Amended Complaint fails to allege a breach of the alleged contract.

> **D.** **The Amended Complaint Does Not Adequately Allege Damage To Jernow**

Under New York law, in an action for breach of contract the plaintiff must allege damages. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir. 1994). In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint. *Gordon v. Dino De Laurentiis Corp.,* 141 A.D.2d 435, 436, 529 N.Y.S.2d 777 (N.Y. App. Div. 1988) (dismissing claim for breach of agreement where complaint contained only boilerplate allegations of damages). Where a party has failed to come forward with sufficient allegations to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order. *Lexington 360 Associates v. First Union Nat. Bank of North Carolina*, 234 A.D.2d 187, 189-190, 651 N.Y.S.2d 490, 492 (N.Y. App. Div. 1996). In this case, the Amended Complaint, aside from the boilerplate allegation set forth in ¶ 38 that Jernow has been damaged, is devoid of any factual allegations demonstrating Jernow's alleged damages. As such, the claim

for breach of contract should be dismissed.  *See Twombly*, 550 U.S. at ____, 127 S. Ct. at 1964-65 (to survive a motion to dismiss, a plaintiff must provide more than conclusions and formulaic recitations of the elements of a cause of action).

In sum, Jernow's contract claim is vulnerable at every possible level.  There was no binding offer to sell Jernow foods that were trans fat free or only contained nominal amounts of trans fats and there was no mutual assent to such an agreement.  Moreover, even if the alleged representations in the advertisements and nutritional displays could somehow constitute a term in an enforceable contract, the Amended Complaint confirms that Wendy's performed as it promised it would.  Jernow's claim for breach of an implied-in-fact contract should be dismissed.

## IV.     JERNOW'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Jernow contends that as a result of Wendy's misleading representations, Wendy's was unjustly enriched through the payment of the purchase price for the fried food products.  Amended Compl. at ¶ 40.  According to Jernow, it would be against equity and good conscience to permit Wendy's to retain the ill-gotten benefits that it received as a result of Wendy's failure to abide by its alleged promise to provide Jernow with food products that were trans fat free or contained only nominal amounts of trans fat.  *Id.* at ¶ 41.  As a matter of law, these allegations do not entitle Jernow to recover on his claim for unjust enrichment.

In order to recover for unjust enrichment under New York law, it must be established that plaintiff enriched defendant and that the circumstances were such that it would be unjust to permit defendant to refuse to make any restitution to plaintiff.  *Werlin v. Reader's Digest Ass'n, Inc.,* 528 F. Supp. 451, 465 (S.D.N.Y. 1981).

Jernow's contention that Wendy's was obligated to provide Jernow with foods that were trans fat free or containing nominal amounts of trans fats has no support in the alleged facts or at law (as discussed *supra*, Sections II and III). Therefore, there is no basis for Jernow's allegation that Wendy's was unjustly enriched by Jernow's alleged purchases. *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 316 (S.D.N.Y. 2006); *see also Grossman v. Matchnet PLC*, 10 A.D.3d 577, 578, 782 N.Y.S.2d 246, 247 (N.Y. App. Div. 2004) (dismissing claim for unjust enrichment where the plaintiff did not identify any manner in which the defendant was unjustly enriched).

Moreover, in seeking damages for unjust enrichment, Jernow merely re-characterizes Wendy's duty not to engage in deceptive practices, as well as the breach of contract claim. Jernow's attempt to parse two causes of action from the same course of conduct is not proper and warrants dismissal of the unjust enrichment claim. *Karlin v. IVF Am., Inc.,* 239 A.D.2d 560, 658 N.Y.S.2d 73, 75 (N.Y. App. Div. 1997) (affirming the dismissal of an unjust enrichment claim where it was "merely [a] reformulation[ ] of the cause of action" to recover for medical malpractice), *modified on other grounds,* 93 N.Y.2d 282, 690 N.Y.S.2d 495, 712 N.E.2d 662 (N.Y. 1999). *Carofino v. Forester*, 450 F. Supp. 2d 257, 266 (S.D.N.Y. 2006) (same). For all these reasons, Jernow's claim for unjust enrichment should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Wendy's respectfully requests that the Court dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief may be granted.

Dated:  July 16, 2007
      New York, New York


Respectfully submitted,


By:         /s/
        AKIN GUMP STRAUSS HAUER & FELD
        LLP
        Cheryl A. Falvey (CA-2074)
        Thomas P. McLish
        Troy D. Cahill
        1333 New Hampshire Avenue, NW
        Washington, DC  20036
        (202) 887-4000  (telephone)
        (202) 887-4288  (facsimile)

*Attorneys for Defendant Wendy's International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Memorandum Of Law In Support Of Motion To Dismiss to be served this 16th day of July, 2007, by ECF Notification to the following persons:

Michael R. Reese
Kim E. Richman
Gutride Safier Reese LLP
230 Park Avenue, Suite 963
New York, NY 10169

Seth A. Safier
Gutride Safier Reese LLP
835 Douglas Street
San Francisco, CA 94114

Lee A. Weis
Rebecca Tingey
Dreier LLP
499 Park Avenue
New York, NY 10022

COUNSEL FOR PLAINTIFF


_____/s/_____
Cheryl A. Falvey