**GUTRIDE SAFIER REESE LLP**
Michael R. Reese
Kim E. Richman
230 Park Avenue, Suite 963
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

  -and-

**DREIER LLP**
Lee A. Weiss
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 652-3821
Facsimile: (212) 328-6101

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM JERNOW, on behalf of himself and all others similarly situated, | No. 07 Civ. 3971 (LTS) (THK) |
| Plaintiffs, | |
| vs. | PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT |
| WENDY'S INTERNATIONAL, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS.................................................................................................... 2

ARGUMENT....................................................................................................................... 5

I.      STANDARD ON A MOTION TO DISMISS ................................................... 5

II.     THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GBL §349 ................... 6

III.    THE COMPLAINT STATES A CAUSE OF ACTION FOR
        BREACH OF IMPLIED IN FACT CONTRACT ......................................................... 10

        A.      The Complaint Alleges Sufficient Facts to Establish the Existence of an
                Enforceable Contract............................................................................. 10

                1.      Plaintiff Has Pleaded Mutual Assent ....................................... 10

                2.      The Purported Disclaimer on the Nutritional Display
                        Poster Does not Refute the Existence of the Contract .............. 13

                3.      The Terms of the Contract are Clear, Definite and Explicit ..... 15

        B.      The Complaint Alleges Defendant's Breach of the Implied in Fact
                Contract ................................................................................................. 16

        C.      Plaintiff Sufficiently Alleges Damages .................................................. 17

IV.     THE COMPLAINT STATES A CLAIM FOR
        UNJUST ENRICHMENT .......................................................................................... 17

CONCLUSION.................................................................................................................... 20

Plaintiff Adam Jernow ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Wendy's International Inc.'s ("Wendy's") Motion to Dismiss the Amended Complaint ("D. Mem.").

## PRELIMINARY STATEMENT

The consumption of trans-fats is a very serious health concern for Americans. Numerous esteemed medical studies have stated that ingestion *of any level* of trans-fats is unsafe. Recognizing the risk trans-fats pose to its citizens, several cities, including New York City, have banned the sale of any food containing trans-fats.

Defendant Wendy's is a large fast-food chain restaurant that distinguishes itself from its competitors by claiming that it sells high-quality, fresh and healthy food, for which Wendy's is able to charge a premium. Capitalizing on the health problems posed by trans-fats, in June 2006 Wendy's launched a nationwide campaign to insure that the consuming public was aware that it had purportedly eliminated or substantially reduced trans-fats from its food. Unfortunately for consumers, these representations were false as studies have shown that Wendy's food still contains significant levels of dangerous trans-fats.

Wendy's misconduct, and the threat it poses to public health, is the very type of activity New York's consumer protection laws - specifically New York General Business Law §349 ("GBL §349" or "§349") were intended to prevent. Nevertheless, Wendy's, relying on cases with inappropriate factual circumstances, seeks to persuade this Court that the types of damages alleged by plaintiff are not recoverable under GBL §349. In fact, as discussed below, the precise categories of damages alleged by plaintiff - the payment of an inflated price for a product due to a misrepresentation and injury due to the unknowing consumption of a dangerous product, are recognized as appropriate under GBL §349 jurisprudence.

Further, plaintiff has sufficiently alleged the existence of a contract, as after Wendy's made its representations that its food products were trans-fat free, he tendered consideration to Wendy's in exchange for food products and Wendy's accepted the money. The cases upon which defendant premises its argument that there was no contract between the parties are readily distinguishable because in those cases the defendant did not accept the plaintiff's consideration, and thus no contract was ever formed. Moreover, plaintiff alleges that Wendy's breached the contract by failing to provide plaintiff with what he had been promised and that he suffered damages.

Lastly, plaintiff has alleged sufficient facts to support his unjust enrichment claim, which is an appropriate alternative claim, asserted in equity, when defendant disputes the existence of a contract. Plaintiff alleges that Wendy's has been enriched, at plaintiff's expense, because he paid a premium that he would not have otherwise paid but for Wendy's misrepresentations concerning the trans-fat content of the food.

Accordingly, as plaintiff has properly pled his GBL §349, breach of contract and unjust enrichment claims, defendant's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Wendy's is one of the world's largest chain restaurants and distinguishes itself from its competitors by marketing itself as a purveyor of high-quality, "healthy" fast-food. ¶¶11-12.[1] This representation of quality allows Wendy's to charge a premium for its food compared to the prices charged by its competitors. ¶12. For example, a Forbes article stated that "Cutting costs and chasing market share with lower-quality food was something [CEO] Thomas would never

---

[1] Citations to "¶__" or "¶¶__" refer to paragraphs in plaintiff's Amended Complaint for Deceptive Sales Practices; Breach of Implied in Fact Contract; Unjust Enrichment (the "Complaint").

abide at Wendy's and that approach has paid off handsomely. Customers are willing to pay more for extra quality in their fast foods, and that has insulated sales during the recent economy downturn." *Id.* Additionally, the article noted that Wendy's focus on the quality of its food "allows for a 0.7% pricing increase each year."

Trans-fats present a serious health risk to all Americans and have been cited as a leading cause of heart disease and death. Scientific studies have concluded that there is no safe level of trans-fats consumption and that trans-fats should be eliminated from one's diet. ¶¶9-10 citing the National Academy of Sciences' quotation of *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* at http://www.nationalacademies.org/headlines/20061212.html (last visited August 14, 2007). Additionally, the Harvard School of Public Health reports that "eliminating trans fats from the U.S. food supply could prevent between 6 and 19 percent of heart attacks and related deaths each year--a staggering number, given that there are 1.2 million heart attacks and related deaths in the U.S. annually." *See* http://www.hsph.harvard.edu/nutritionsource/transfats.html (last visited August 14, 2007).

On June 8, 2006, capitalizing on concerns over the dangers of trans-fats, Wendy's issued a press release announcing that beginning in August 2006, it was switching to non-hydrogenated cooking oil which would purportedly eliminate or substantially reduce the levels of trans-fats in its french fries and fried chicken products. ¶13. The press release stated in relevant part, that the "breaded chicken sandwiches, nuggets and strips will have zero grams of trans fat. Depending on the serving size, trans fats in French fry offerings will range from zero to 0.5 grams. Kids' Meal nuggets and fries will have zero grams of trans fat." *Id.*

3

Once it had purportedly completed the transition to the new cooking oil, Wendy's took

numerous steps to insure that the consuming public was aware of the supposed low levels of

trans-fats in its fried food products, including:

- Changing the bags it packages its food in to read in bold letters:

  **Do What Tastes Right.**

  **Wendy's cooking oil has 0 g trans fat.**

- Issuing a press release on August 24, 2006 confirming that the switch to the new
  cooking oil with zero grams of trans-fats had been completed.  The press release
  stated in relevant part, "Wendy's has kept its promise to its customers ... After
  two years of research and development, we said in June that we would convert to
  the new cooking oil by the end of August.  We're proud to announce that this
  process is now complete"; and

- Altering the nutritional information display poster next to where customers stand
  in line in restaurants to place their orders so that it stated that (i) the level of trans-
  fats in Wendy's Kids' Meal size french fries was 0 grams and 0.5 grams in all
  other sizes; and (ii) Wendy's fried chicken items contained zero grams of trans-
  fats.

¶¶14-15, 33.

Despite Wendy's representations, including those made as part of its nationwide

marketing campaign, tests of Wendy's french fries have revealed that they continue to contain

high levels of dangerous trans-fats:

- In November 2006, Consumer Reports published an article revealing that based
  upon tests conducted by an independent laboratory, large servings of defendant's
  french fries contained 2.5 grams of trans-fats, 500% more than defendant had
  represented.  ¶16.

- On February 9, 2007, plaintiff's counsel had an independent laboratory measure
  the amount of trans-fats in a small serving size of defendant's french fries.  The
  test revealed that defendant's representations regarding trans-fats levels were and
  continue to be false, as the order of french fries that was supposed to contain 0.5
  grams of trans-fats actually had 1.3 grams.  ¶17.

Plaintiff, who purchased Wendy's food products that Wendy's represented as containing,

at most, nominal amounts of trans-fats, filed his original complaint on May 22, 2007, alleging

deceptive sales practices in violation of GBL §349, breach of implied in fact contract and unjust enrichment. On June 20, 2007, plaintiff filed the Amended Complaint.

## ARGUMENT

## I.    STANDARD ON A MOTION TO DISMISS

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court "must accept as true the [factual] allegations contained in the complaint, and all reasonable inferences must be drawn in favor of the non-movant." *Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002); *see also Jaghory v. NYS Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Moreover, a court "may not dismiss a complaint unless 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.'" *Jaghory*, 131 F.3d at 329; quoting *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984).

In *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) – a case with facts very similar to those before this Court - the Second Circuit made clear that the standard on a motion to dismiss a consumer fraud claim brought pursuant to GBL §349 is subject only to Fed. R. Civ. P. 8(a):

> [B]ecause a private action under §349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under §349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ. P., *see generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).

Here, the Complaint easily satisfies this standard.

## II.    THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GBL §349

GBL §349 "seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). It was "intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 774 (App. Div. 1995). GBL §349 is "based on broad consumer-protection concerns." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999). Accordingly, the scope of the statute is "intentionally broad, applying to 'virtually all economic activity.'" *Goshen*, 774 N.E.2d at 1195.

"The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising" and tends to "involve transactions where the amount in controversy is small." *Teller*, 630 N.Y.S.2d at 773; quoting *Genesco Entm't v. Koch*, 593 F.Supp. 743, 751 (S.D.N.Y. 1984). "The kinds of trade practices which have been considered as deceptive in the past include false advertising ... [and] misrepresentation of the origin, nature or quality of the product." *Id.*; citing *E. Air Lines, Inc. v. N.Y. Air Lines, Inc.*, 559 F.Supp. 1270 (S.D.N.Y. 1983); *Century Metalcraft Corp. v. FTC*, 112 F.2d 443 (7th Cir. 1940). It is these very types of practices – false advertising and misrepresentation as to the nature and quality of the product – that are at issue here.

Because of the broad, protective powers of GBL §349, the statute "contemplates actionable conduct that does not necessarily rise to the level of fraud." *Gaidon*, 725 N.E.2d at 603. Rather, in order to make out a §349 claim, "a plaintiff must allege [only] a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a

plaintiff." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004).

Wendy's bases its challenge to plaintiff's GBL §349 consumer fraud claim upon a narrow, draconian reading of the "injury" requirement of GBL §349. However, plaintiff's allegations regarding Wendy's conduct – misrepresentations about the level of trans-fats in Wendy's food – readily satisfy the "injury" requirement of GBL §349 on two separate, independent grounds. First, plaintiff alleges that he was injured because Wendy's affirmative misrepresentations directly affected the prices it charged for its food products, such that he paid a premium for Wendy's food products that Wendy's misrepresented as being trans-fat free. ¶¶7, 12. Second, plaintiff alleges that he was injured by unknowingly ingesting dangerous levels of trans-fats. ¶¶16-17, 30. Each of these allegations alone is sufficient for the Complaint to state a claim. Accordingly, defendant's motion to dismiss plaintiff's GBL §349 claim is without merit and should be denied.

The Second Circuit's decision in *Pelman v. McDonald's Corp.*, 396 F.3d 508, is on point. There, plaintiff claimed that McDonald's had violated GBL §349, among other statutes, by falsely representing that McDonald's food was "nutritionally beneficial and part of a healthy lifestyle if consumed daily" and that "McDonald's failed adequately to disclose that its use of certain additives and the manner of its food processing rendered certain of its foods substantially less healthy than represented." *Id.* at 510. The District Court dismissed plaintiff's claims, stating that the plaintiff had failed to state that he had suffered an actual injury cognizable under GBL §349. *Id.* at 511-12.

The Second Circuit reversed, holding that the complaint stated a claim under GBL §349. *Id.* ("the district court nonetheless dismissed the claims under §349 because it concluded that

7

'plaintiffs have failed, however, to draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries.'… This, however, is the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements"). Here, the Complaint makes similar allegations to those in *Pelman – i.e.* that defendant misled consumers about the quality of its food by misrepresenting that it did not contain harmful additives, when in fact it did. Following the logic of the Second Circuit's decision in *Pelman*, the Complaint here states a claim under GBL §349.

The cases relied upon by defendant do not require a different result and, in fact, underscore that plaintiff has stated a claim under GBL §349. For example, defendant relies heavily on *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) to argue that GBL §349 bars a claim seeking recovery of any portion of the purchase price of a product, no matter how flagrant and false defendant's statements are about the quality (or lack thereof) of the product. However, *Small* holds that a plaintiff can state a claim if she alleges that deception allowed defendant to charge an inflated price for the product, as is alleged here. *Id.* at 898, n.5. Since *Small*, courts have held that a cause of action based upon an allegedly inflated price states a claim under GBL §349. *See, e.g., Cox v. Microsoft Corp.*, No. 105193/2000, 2005 WL 3288130, at *5 (N.Y. Sup. Ct. July 29, 2005) ("This case is not similar to *Small*, where the plaintiffs could not prove actual harm. Here, plaintiffs allege that Microsoft was able to charge inflated prices for its products as a result of its deceptive actions and that these inflated prices passed to consumers.").[2]

_____

[2] *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10 (App. Div. 2004) and *Reyes v. McDonald's Corp.*, No. 06 Civ. 1604, 2006 WL 3253579, at *2 (N.D. Ill. Nov. 8, 2006), each of which relies upon the holding in *Small*, are distinguishable. Here, unlike in those cases, it is alleged that defendant's deception (1) allowed defendant to charge a premium for its product and (2) caused physical injury (the ingestion of a dangerous additive) – both of which the court in

8

Additionally, *Small* does not preclude claims where the subject misrepresentations affirmatively affect the price of the product. Notably, *Small* involved a case of omissions – *i.e.* the defendants purportedly did not disclose that nicotine was addictive. Such conduct cannot impact the price that was actually paid by the consumer for the product, as the consumer is unaware of the omitted facts. In contrast, this case involves affirmative misrepresentations about the product – *i.e.* consumers thought they were paying for trans-fat free food when the food actually contained significant levels of trans-fats. It is a case of "failing to deliver as promised", which the courts repeatedly have "recognized as fraudulent and illegal conduct violating General Business Law §349." *People by Vacco v. Lipsitz,* 663 N.Y.S.2d 468, 475 (Sup. Ct. 1997). In such a case, the price for the product is determined by the misrepresentation and is therefore recoverable in its entirety. *Id.* (GBL §349 claim for recovery of price of good that was never received by consumer as represented by the defendant upheld as sufficient). *See also Tate v. Fuccillo Ford, Inc.,* 831 N.Y.S.2d 304 (City Ct. 2007) (upholding GBL §349 claim based upon charges to plaintiff for hours not actually worked on repair of automobile); *Griffin-Amiel v. Frank Terris Orchestras,* 677 N.Y.S.2d 908 (City Ct. 1998) (GBL §349 claim for cost of wedding singer who failed to perform as promised upheld); *Rossi v. 21st Century Concepts, Inc.,* 618 N.Y.S.2d 182 (City Ct. 1994) (GBL §349 claim based upon recovery of costs paid for line of cookware that defendant affirmatively misrepresented as aiding in the prevention of heart disease and containing other nutritional benefits held to be sufficient).

---

*Small* recognized as sufficient to state a claim for damages under GBL §349. *See Small*, 720 N.E.2d. at 898.

## III.    THE COMPLAINT STATES A CAUSE OF ACTION FOR BREACH OF IMPLIED IN FACT CONTRACT

"The essential elements to pleading a cause of action for breach of contract are as follow: (1) the making of an agreement; (2) due performance by plaintiff;[3] (3) breach thereof by defendant; and (4) causing damage to the plaintiff." *Int'l Flavors & Fragrances, Inc. v. Royal Ins. Co. of Am.*, No. 605910/01, 2003 WL 24013814, at *5 (N.Y. Sup. Ct. Mar. 31, 2003) (internal citations omitted). An implied in fact contract arises as an "inference from the facts and circumstances of the case, although not formally stated in words" and "is just as binding as an express contract … since in the law there is no distinction between arrangements made by words and those made by conduct." *Jemzura v. Jemzura,* 330 N.E.2d 414, 420 (N.Y. 1975).

### A.    The Complaint Alleges Sufficient Facts to Establish the Existence of an Enforceable Contract

#### 1.    *Plaintiff Has Pleaded Mutual Assent*

Mutual assent is evidenced by an offer followed by acceptance of an agreement that contains definite essential terms. *Gui's Lumber & Home Ctr., Inc. v. Mader Constr. Co.*, 787 N.Y.S.2d 555 (App. Div. 2004). The manifestation of mutual assent to a contract "requires that each party either make a promise or begin or render a performance." *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999); quoting Restatement [Second] of Contracts §18 (1981).

The Complaint alleges that beginning in June 2006, in conjunction with a nationwide advertising campaign, Wendy's represented nationwide, including, but not limited to nutritional information signs in its stores, press releases and other advertising, and on the very packaging that contained its food, that its food would have, at most, nominal amounts of trans-fat (*i.e.* no

---

[3] Wendy's does not challenge that plaintiff has fully performed under the implied contract alleged in the Complaint (*i.e.*, that he paid for Wendy's food products). As discussed below, defendant's acceptance of plaintiff's money is persuasive evidence that a contract was formed.

more than 0.5 grams of trans-fats for its large french fries, 0 grams for smaller quantities, and 0 grams of trans-fats for its fried chicken products). ¶¶13-15. The Complaint further alleges that plaintiff purchased Wendy's fried food products after seeing defendant's representations regarding trans-fats. *See, e.g.,* ¶30. These allegations are more than sufficient to establish the existence of a binding implied-in-fact contract.

The facts here are analogous to those in *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 929 (Va. 1991). There, defendant published an advertisement stating that customers could deposit $14,000 in a CD with the bank and receive $20,136.12 upon maturity. When plaintiffs, who had deposited $14,000, sought to liquidate the CD upon maturity, the bank informed them that the ad contained a typographical error and that they actually needed to have deposited $15,000 in order to receive the full amount promised in the ad. The court sustained plaintiffs' breach of contract claim and held that "the advertisement constituted an offer which was accepted when [plaintiffs] deposited their $14,000 with the Bank for a period of three and one-half years." *Id.* at 930. Similarly, here, plaintiff paid the amount required by defendant, but did not receive what had been promised by defendant.

Defendant's contention that its public advertising was not an offer to enter into a contract is an obvious red herring. On this motion, the Court need not determine whether any of Wendy's marketing materials constituted an offer.[4] Defendant acknowledges that, at a minimum, its

---

[4]  Advertisements are offers when they are "clear, definite, and explicit, and leave[] nothing open for negotiation." *See Lefkowitz v. Great Minneapolis Surplus Store*, Inc., 86 N.W.2d 689 (Minn. 1957). *See also Harris v. Time, Inc.*, 237 Cal.Rptr. 584, 587 (Ct. App. 1987) (envelope of defendant's mailer that offered a watch in exchange for opening the envelope held to constitute an offer that was accepted by the act of opening the envelope*); Izadi v. Machado (Gus) Ford, Inc.*, 550 So.2d 1135, 1138 (Fla. Dist. Ct. App. 1989) (holding defendant's advertisement to sell a particular car for $3,595 plus any trade-in vehicle constituted a binding offer which plaintiff accepted by tendering $3,595 in cash and a trade-in); *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa. Super. Ct. 1989) (sign on golf course proclaiming that anyone hitting a hole-in-

public solicitations constituted an invitation to the public to make it an offer to purchase Wendy's food products. *See* D. Mem. at 15-16 (press release and nutritional information display were "invitations to enter into negotiations"). Thus, when Wendy's accepted plaintiff's offer of consideration for food products that defendant represented would have zero, or nomimal, trans-fats, a contract was formed. *See Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 959 F. Supp. 496, 500 (N.D. Ill. 1997) (ads are an invitation to deal on the specified terms, no contract until merchant accepts the money) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)); *Zanakis-Pico v. Cutter Dodge, Inc.*, 47 P.3d 1222, 1237 (Haw. 2002) (ads solicit offers and contract arises when merchant accepts offer by taking money) (citing *Steinberg*, 371 N.E.2d at 639); *Leonard v. Pepsico, Inc.*, 88 F. Supp.2d 116, 124 (S.D.N.Y. 1999) (enforceable contract would arise if defendant accepted Order Form and cashed plaintiff's check).

The inapposite facts of the cases cited by defendant for the proposition that advertisements are not offers underscore the existence of a contract in this case. In each of the two cited cases (D. Mem. at 15), the plaintiff sought to accept the purported offer and the defendant refused to provide the product that was offered. *See Leonard*, 88 F.Supp.2d 116 (defendant rejected plaintiff's attempt to redeem Pepsi points for a jet plane); *Geismar v. Abraham & Strauss*, 439 N.Y.S.2d 1005 (Dist. Ct. 1981) (defendant refused to sell dishes to plaintiff for advertised price). In contrast, here, defendant accepted plaintiff's consideration and delivered the product.

---

one would win a car found to constitute an offer which was accepted when plaintiff shot a hole-in-one).

2.    *The Purported Disclaimer on the Nutritional Display Poster Does not Refute the Existence of the Contract*

Defendant alleges that a purported disclaimer on its nutritional display poster prevented a contract from being formed.[5]  The following is the language relied upon by defendant:

> The nutrition information contained on this poster is based on standard U.S. product formulations.  Variations may occur due to the differences in suppliers, ingredient substitutions, recipe revisions, product assembly at the restaurant, and/or the season of the year ....

D. Mem. at 16.  The referenced language does not warn the reader that, as plaintiff alleges, the representations regarding trans-fats are false.[6]  While Wendy's is certainly free to argue that its represented trans-fats levels are accurate for "standard U.S. production formulations," and that the Wendy's food purchased by plaintiff and those tested by Consumer Reports contained higher levels of trans-fats than were represented by defendant for the reasons set forth in the purported disclaimer, these are factual issues that cannot be considered in connection with this motion.

*Scott v. Bell Atlantic Corp.*, 726 N.Y.S.2d 60 (App. Div. 2001) (D. Mem. at 16) does not support defendant's argument that its disclaimer prevented a contract from being formed.  There, plaintiffs sued for breach of a purported contract between themselves and Verizon due to service interruptions and errors concerning their Verizon DSL service.  The Court held that the claim failed due to "conspicuous, unequivocal disclamations concerning any warranties as to, *inter alia*, disruptions or errors in service."  *Id.* at 64 (citation omitted).  Here, there was no unequivocal disclaimer suggesting that the representations regarding the trans-fats content of

---

[5]  Exhibit A to defendant's brief, which is supposed to be a true and correct copy of the relevant nutritional display poster, does not even contain the purported disclaimer.

[6]  To the extent that the first sentence of the disclaimer is false, as plaintiff contends it is, Wendy's cannot use the disclaimer as a defense to plaintiff's claims.  *See Cartier, Inc. v. Deziner Wholesale LLC*, No. 98 Civ. 4947 (RLC), 2000 WL 347171, at *3 (S.D.N.Y. Apr. 3, 2000) (disclaimer insufficient to prevent a claim of trademark infringement where it falsely created the impression of a relationship between defendant's products and plaintiff's products).

defendant's food products should not be relied upon. Instead, the disclaimer upon which defendant attempts to rely only indicates that nutritional information can vary based upon certain enumerated factors. The disclaimer does not indicate that, as alleged by plaintiff, defendant cannot deliver any food products that contain the low levels of trans-fats indicated on the poster. At a minimum, the disclaimer raises numerous issues of fact as to whether it was sufficient to prevent a contract from being formed.[7]

Finally, there are additional issues of fact regarding the conspicuousness of the supposed disclaimer that cannot be resolved at this time. New York's version of the Uniform Commercial Code defines "conspicuous" as "so written that a reasonable person against whom it is to operate ought to have noticed it … Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." N.Y. U.C.C. §1-201(10). "[D]isclaimers of liability must be conspicuous, in that they are set out in capital letters or otherwise drawn to the attention of the non-drafting party." *Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT&T Commc'ns, Inc.*, No. 92 Civ. 7862 (KMW), 1996 WL 312535, at *6 (S.D.N.Y. June 10, 1996). As defendant has failed to provide a copy of the purported disclaimer, it is not possible for the Court to determine that the disclaimer was sufficiently conspicuous. Further, given the general nature of the disclaimer's language (it does not refer to any particular food product), no reasonable consumer who read the disclaimer would understand that it could mean that Wendy's representations regarding the trans-fats levels in its french fries or chicken products were inaccurate.

---

[7] *Maas v. Cornell Univ.*, 721 N.E.2d 966 (D. Mem. at 16) is merely one of a legion of cases that states that employee handbooks do not create contractual rights unless the employer evinces an intent to be contractually bound by the provisions of the handbook. That principle has no application here.

###### 3. The Terms of the Contract are Clear, Definite and Explicit

The standard for definiteness is "necessarily flexible, varying for example with the subject of the agreement, its complexity, the purpose for which the contract was made, the circumstances under which it was made, and the relation of the parties." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989) (citations omitted). The New York Court of Appeals has not rigidly applied the definiteness doctrine. *In re 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E.2d 104, 105 (N.Y. 1991). As the court stated in *Cobble Hill*, "at some point virtually every agreement can be said to have a degree of indefiniteness, and if the doctrine is applied with a heavy hand it may defeat the reasonable expectations of the parties in entering into the contract." 548 N.E.2d at 206. The Court of Appeals has said "[s]triking down a contract as indefinite and in essence meaningless 'is at best a last resort.'" *Mamaroneck*, 575 N.E.2d at 106; quoting *Cohen & Sons v. Lurie Woolen Co.*, 133 N.E. 370, 371 (N.Y. 1921).

As the contract here is quite straightforward - plaintiff paid Wendy's the posted price in exchange for french fries that were supposed to contain a maximum of 0.5 grams of trans-fats - defendant is reduced to contending the Complaint's use of the word "nominal" in connection with the promised amount of trans-fats means that the contract was indefinite. D. Mem. at 17. This argument is laughable. The Complaint precisely alleges that Wendy's represented that its fried food products would contain anywhere from zero to 0.5 grams of trans-fats. *See, e.g.*, ¶13 (quoting press release stating that "All Breaded Chicken Products Will Have Zero Grams of Trans Fats; French Fries to Range from Zero to 0.5 Grams" and setting forth chart from press release that has amounts of trans-fats for each fried food product); ¶15 (describing amounts of trans-fats set forth on in-store nutritional display). As defendant is no doubt aware, the

15

Complaint merely uses the word nominal as a synonym for 0.5 grams or less of trans-fats. Thus, the Complaint provides the requisite specificity regarding the subject contract.

**B.    The Complaint Alleges Defendant's Breach of the Implied in Fact Contract**

Defendant claims that plaintiff does not allege that he purchased or consumed any of Wendy's fried food products that contained elevated levels of trans-fats. D. Mem. at 18-19. However, the Complaint makes such an allegation numerous times. *See, e.g.*, ¶7 ("plaintiff ... purchased Wendy's french fries and fried chicken products during the Class Period containing higher levels of trans-fats than represented"); ¶21 ("plaintiff, like all members of the Class, purchased fried food products from Wendy's in a typical consumer setting and sustained damages from Defendant's wrongful conduct"); ¶36 (" Wendy's breached the implied-in-fact contracts with plaintiff and others similarly situated, including the implied covenant of good faith and fair dealing, by knowingly failing to provide plaintiff, and those similarly situated, with the products they desired, paid consideration for, and thought that they were receiving").

Defendant further contends that it did not breach the subject contract with plaintiff because the difference between 0.5 grams and 1.3 grams of trans-fats "is, under any definition of the word, nominal." D. Mem. at 19. However, this is undoubtedly an issue of fact that should not be considered in connection with this motion.

The sole support for defendant's contention is that the Consumer Reports article that initially revealed that Wendy's had misrepresented the trans-fats levels in its fried food products reported that some nutrition experts have set a limit of 20 grams of trans-fats and saturated fats per day. *Id.* The article does not distinguish between trans-fats and saturated fats, so it is difficult to place any significance on the stated amounts. Moreover, the Complaint identifies a study concluding that no level of trans-fats is safe. ¶10. Thus, this issue will need to be resolved at trial (and will undoubtedly be the subject of expert testimony).

C.    **Plaintiff Sufficiently Alleges Damages**

The Complaint alleges that plaintiff was damaged because he would not have purchased

defendant's fried food products nor paid a premium for them had defendant disclosed the actual

amount of trans-fats in the products. ¶¶7, 12.  This is a typical damage claim in a breach of

contract action where the defendant is alleged to have delivered a product that did not conform to

the terms of the contract.[8]  *See Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179

F.Supp.2d 16 (N.D.N.Y. 2001) (plaintiff's allegations that defendant failed to provide the fire

alarm system and service it agreed to provide held sufficient to state cause of action for breach of

contract); *O'Rourke v. Am. Kennels*, No. S.C. 3295/04, 2005 WL 1026955, at *1 (N.Y. Civ. Ct.

Apr. 27, 2005) (dog that plaintiff purchased from defendant held to be a non-conforming good

because plaintiff paid a premium for a Teacup Maltese and received a standard Maltese; plaintiff

awarded damages representing the amount of the premium paid).

## IV.    THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT

A plaintiff seeking recovery for unjust enrichment must show that (1) defendant was

enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against allowing

defendant to retain what plaintiff seeks to recover.  *Bangkok Crafts Corp. v. Capitolo Di San*

*Pietro in Vaticano*, No. 03 Civ. 15 (RWS), 2007 WL 1687044, at *9 (S.D.N.Y. June 11, 2007).

---

[8] Defendant's cases (D. Mem. at 19) are inapposite, as the claims there failed because there was
no link between the alleged breach and the alleged injury.  For example, in *Gordon v. Dino De
Laurentiis Corp.*, 529 N.Y.S.2d 777, 778 (App. Div. 1988), plaintiff alleged that he was
damaged by defendant's breach of a confidentiality agreement, but there was no allegation as to
how that breach caused any injury.  Similarly, in *Lexington 360 Assocs. v. First Union Nat'l
Bank of N.C.*, 651 N.Y.S.2d 490, 492-3 (App. Div. 1996), plaintiff alleged that it was unable to
repay a loan as a result of defendant's breach of a real estate loan agreement, but the Court held
that plaintiff would have defaulted on the loan regardless of whether defendant had committed
the alleged breach.

Plaintiff brings his unjust enrichment claim as an alternative claim asserted in equity to the breach of implied in fact contract claim asserted at law. In *Werlin v. Reader's Digest Ass'n.*, 528 F.Supp. 451, 465 (S.D.N.Y. 1981) – a case upon which defendant relies – the court held that even if there is no express or implied-in-fact contract, "the defendant may, in appropriate circumstances, nevertheless be found liable to the plaintiff in quasi contract on a theory of unjust enrichment." *Id.* "New York courts and courts in this federal district have held ... that a claim of unjust enrichment may be alleged in addition to a breach of contract claim when the validity of the contract is in question, because recovery under a quasi-contract theory may be proper if the contract is found to be void." *Bangkok Crafts*, 2007 WL 1687044, at *9; *see also Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (claim for unjust enrichment is a proper alternative to contract claim when defendant disputed being a party to the contract); *Katz Dochrermann & Epstein, Inc. v. HBO*, No. 97 Civ. 7763 (TPG), 1999 WL 179603, at *5 (S.D.N.Y. Mar. 31, 1999) (refusing to dismiss unjust claim because it asserted an alternative equitable remedy to the claim for breach of implied in fact contract).[9]

Plaintiff alleges that defendant has been enriched, at plaintiff's expense, by selling fried food products it would not have otherwise sold had it accurately represented the level of trans-fats in the food. Plaintiff further alleges that defendant is enriched because it is able to charge a premium by representing that its fried food products are trans-fat free or contain 0.5 grams or less of trans-fats. These allegations are sufficient to support a claim for unjust enrichment. For example, in *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004), the court held that

---

[9] Thus, plaintiff's unjust enrichment claim is not "merely [a] reformulation[] of [another] cause of action" and dismissal on this ground is unwarranted. *Karlin v. IVF Am., Inc.*, 658 N.Y.S.2d 73 (App. Div. 1997).

plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products stated a cause of action for unjust enrichment.

Further, although Wendy's asserts it had no obligation to provide food that contained 0.5 grams or less of trans-fats (D. Mem. at 21) that is precisely what Wendy's promised to customers in its labeling, advertising, marketing and sales of its food products. It would be against equity and good conscience to allow Wendy's to benefit from its misrepresentations regarding the level of trans-fats in its food. Thus, the Complaint states a cause of action for unjust enrichment.[10]

---

[10] Defendant's citation to *Carruthers v. Flaum*, 450 F.Supp.2d 288 (S.D.N.Y. 2006) is misplaced, since the court there dismissed the unjust enrichment claim on procedural grounds without reaching the merits.

**CONCLUSION**

For the reasons stated above, plaintiff respectfully requests that defendant's Motion to

Dismiss be denied in its entirety.[11]

Dated:  August 29, 2007
        New York, New York

<div style="margin-left:40%">

Respectfully submitted,

**GUTRIDE SAFIER REESE LLP**
Michael R. Reese
Kim E. Richman
230 Park Avenue, Suite 963
New York, New York 10169
Telephone:  (212) 579-4625
Facsimile:  (212) 253-4272

   - and -

**DREIER LLP**

By:___/s/ Lee A. Weiss_____
Lee A. Weiss
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 652-3821
Facsimile:  (212) 328-6101

*Attorneys for Plaintiff*

</div>

---

[11] If the Court does not deny defendant's motion to dismiss in its entirety, plaintiff hereby respectfully requests leave to amend his complaint to cure any deficiencies identified by the Court. *See, e.g., Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) ("leave to amend should be freely granted").

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint to be served on this 29th day of August 2007 by ECF notification to the following:

Cheryl A. Falvey
Akin Gump Strauss Hauer & Feld, L.L.P.
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4318
Fax: (202) 887-4288
Email: cfalvey@akingump.com

*Counsel for Defendant Wendy's International, Inc.*

/s/   Rebecca Tingey
Rebecca Tingey