USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: NOV 1 5 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ADAM JERNOW, on behalf of himself
and all others similarly situated,

Plaintiffs,

-v-

WENDY'S INTERNATIONAL, INC.,

Defendant.

-------------------------------------------------------x

No. 07 Civ. 3971 (LTS)(THK)

## MEMORANDUM ORDER

### BACKGROUND

Plaintiff Adam Jernow ("Plaintiff" or "Jernow") brings this putative class action against Defendant Wendy's International, Inc. ("Defendant" or "Wendy's") for breach of New York General Business Law Section 349, breach of implied-in-fact contract and unjust enrichment. Defendant has moved to dismiss Plaintiff's Amended Complaint ("Amended Complaint" or "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. § 1332(d).[1] The Court has considered thoroughly all arguments and submissions and, for the reasons enumerated below, denies Defendant's motion.

### FACTS

In deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations in the complaint and must

[1] On November 8, 2007, in response to the Court's November 2, 2007, Order, Plaintiff filed a Supplement to Amended Complaint to address jurisdictional deficiencies in the Amended Complaint.

construe those allegations in the light most favorable to the Plaintiff. W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004). The Court may also consider "any written instrument attached to the [pleading] as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). The factual allegations described below are taken from the Complaint and, because the Court finds that Plaintiff's reliance on the following additional documents has rendered them integral to the Complaint, a Consumer Reports article, a Forbes article and a Wendy's Nutrition Poster. (McLish Decl., Ex. B ("Consumer Reports Article"); McLish Decl., Ex. C ("Forbes Article"); Corrected McLish Decl., Ex. A ("Nutrition Poster").)

Defendant Wendy's is a restaurant operating and franchising chain. (Compl. ¶ 8.) Wendy's has focused its marketing efforts on the quality of its food, distinguishing itself as a healthy alternative to other "fast-food" chains. (Compl. ¶ 11.) In 2006, Wendy's engaged in a national marketing campaign advertising that it was significantly cutting trans fatty acids ("trans fats") from its food by switching to a trans fat-free cooking oil. (Compl. ¶ 13.) Ingesting trans fats can increase low-density lipoprotein ("bad" cholesterol), decrease high-density lipoprotein, increase blood platelet clumping and increase inflammation – factors related to heart disease. (Compl. ¶ 9.) Several scientific studies have concluded that no level of trans fats is safe and that people should consume as little trans fat as possible while still consuming a nutritionally adequate diet. (Compl. ¶ 10.)

Wendy's announced its switch to trans fat-free cooking oil in a June 8, 2006, nationwide press release, as well as on its packaging. (Compl. ¶¶ 13-14.) According to the press release, the switch to the trans fat-free oil was to occur in the beginning of August, 2006. (Compl.

¶ 13.) According to the press release, after the switch, Wendy's Kids' Size french fries would contain zero grams of trans fats, other french fries sizes would contain 0.5 grams of trans fats and Wendy's chicken sandwiches, nuggets and strips would have zero grams of trans fats. (Compl. ¶ 13.) Nutrition Posters placed near store areas where Wendy's patrons placed their orders displayed the same information as the press release. (Compl. ¶ 15.) These Nutrition Posters included text – a box of black text on a yellow background with a red border – stating that "[t]he nutrition information contained on this poster is based on standard U.S. product formulations. Variations may occur due to the difference in suppliers, ingredient substitutions, recipe revisions, product assembly at the restaurant and/or the season of the year." On August 24, 2006, Wendy's announced that the transition to trans fat-free cooking oil had been completed. (Compl. ¶ 33.)

In November 2006, a Consumer Reports article revealed that at least some Wendy's restaurants were selling servings of french fries with higher trans fat content than specified in the press release and on the nutritional display. (Compl. ¶ 16; Consumer Reports Article.) According to the article, independent laboratory tests of large servings of french fries purchased at three different Wendy's restaurants in Westchester County, New York, showed an average trans fat per serving content of 2.5 grams. (Compl. ¶ 16; Consumer Reports Article.) On February 9, 2007, Plaintiff's counsel had an independent laboratory test Wendy's french fries. (Compl. ¶ 17.) The tests indicated that the small size serving of Wendy's french fries had 1.3 grams of trans fats, instead of the 0.5 grams touted in the press release and on the Nutrition Posters. (Compl. ¶ 17.) Plaintiff, an individual who purchased Wendy's french fries and fried chicken products during the period from June 2006 to the present (the "Relevant Period") (Compl. ¶ 7), brought this putative class action asserting claims for violation of New York General Business Law Section 349, breach of implied-in-fact contract and unjust enrichment. (See Plaintiff's original complaint, filed May,

22, 2007). Plaintiff filed an amended complaint on June 20, 2007. (See Compl.)

DISCUSSION

Plaintiff asserts three causes of action. Plaintiff alleges (1) a violation of New York General Business Law Section 349, (2) breach of an implied-in-fact contract and (3) unjust enrichment. The parties have relied upon, and the Court applies, New York law in evaluating the viability of the claims Plaintiff has asserted in this diversity action. Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

New York General Business Law § 349 Claim

Plaintiff claims that Wendy's violated New York General Business Law Section 349 by misrepresenting the trans fat content of its fried food products and causing Plaintiff, and other consumers, to purchase and ingest fried food products with a higher than advertised trans fat content.

In order to show that Plaintiff is entitled to relief for a violation of New York General Business Law Section 349, Plaintiff must allege that: (1) the defendant has engaged "in an act or practice that is deceptive or misleading in a material way;" and (2) "that Plaintiff has been injured by reason thereof." Goshen v. Mut. Life Ins. Co. of New York, 774 N.E.2d 1190, 1195 (N.Y. 2002); see also Ortho Pharm. Corp. v. Coprophar, Inc., 32 F.3d 690, 697 (2d Cir. 1994) (dismissing § 349 claim because plaintiff failed to show that it suffered any injury as a result of the alleged deceptive practice). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Drawing all inferences in Plaintiff's favor, the Complaint sufficiently alleges a violation of Section 349. For the purpose of Section 349, "deceptive acts and practices" are "those

likely to mislead a reasonable consumer acting reasonably under the circumstances." See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995). Plaintiff alleges that Defendant misled consumers as to the quantity of trans fats in its fried food products when it engaged in a national campaign that advertised that Wendy's french fries and fried chicken products contain 0 to 0.5 grams of trans fats, but provided customers with fried food products containing higher quantities of trans fats. (Compl. ¶¶ 13-17.) Plaintiff further alleges that Nutrition Posters in Wendy's restaurants affirmed the misleading information disseminated in the national advertising campaign by identifying lower trans fat quantities in Defendant's french fries and fried chicken products than those foods actually contained. (Compl. ¶ 15.) Plaintiff argues that the boxed text on the Nutrition Poster, which Defendant identifies as a disclaimer, is insufficient to warn potential customers that the representations regarding trans fat content are inaccurate. (Pl.'s Mem. at 13.)

Plaintiff also alleges that he was injured as a result of Defendant's conduct, in that Wendy's was able to charge him a premium based on its representations regarding the trans fat content of its french fries (Compl. ¶¶ 7, 12), and he "unknowingly ingested foods that contained unsafe amounts of trans-fats." (Compl. ¶ 30.)

Under New York law, a premium could constitute an actual injury compensable under Section 349. See Cox v. Microsoft Corp., No. 105193/2000, 2005 WL 3288130, at *5, (N.Y. Sup. Ct. July 29, 2005) (sufficient allegations of actual injury where plaintiffs alleged that Microsoft was able to charge inflated prices for its products as a result of its deceptive actions); see also Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999) ("[Plaintiffs'] theory contains no manifestation of either pecuniary or "actual" harm, plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation.").

The Complaint also alleges an injury resulting from unknowingly ingesting trans fats. (Compl. ¶ 30.) As the New York Court of Appeals has recognized, the injury alleged in connection with a Section 349 claim need not be pecuniary. Oswego, 647 N.E.2d at 745 ("a [§ 349] plaintiff seeking compensatory damages must show . . . actual, although not necessarily pecuniary, harm"). Although the sources provided and relied upon by Plaintiff vary as to what might be considered maximum acceptable trans fat consumption, they indicate that individuals should limit their trans fat intake.[2] Plaintiff alleges that the consumption of trans fats poses a significant health risk and identifies a number of adverse health effects that can allegedly be caused or aggravated by trans fats. (Compl. ¶¶ 9-10.)

Although Plaintiff's allegations of injury are weak, they are sufficient for the purposes of surviving a 12(b)(6) motion to dismiss, where all inferences must be drawn in favor of the plaintiff. Defendant's motion to dismiss is therefore denied with respect to Plaintiff's Section 349 claim.

Breach of Contract Claim

Plaintiff claims that he and Wendy's entered into an implied-in-fact contract for the sale of fried food products, that one of the terms of that contract was that the purchased products contain the advertised quantity of trans fat and that Defendant breached the contract by providing Plaintiff with french fries and chicken products with a higher than advertised trans fat content.

---

2 The Complaint cites one study stating that people should consume as little trans fat as possible. (Compl. ¶ 10.) The Consumer Reports article acknowledges that study, but also states that other nutrition experts recognize a total combined trans and saturated fat intake constituting 10% of total caloric intake to be the upper limit. (See Consumer Reports Article.) This would be about 20 grams of saturated and trans fat combined in a standard 2000 calorie diet. (Id.) However, the article does not identify what portion of that 20 gram quantity can safely be allocated to trans fats.

Plaintiff has sufficiently alleged a breach of contract implied-in-fact. Under New York law, the elements of a breach of contract claim are: "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." Macaluso v. U.S. Life Insurance Co., No. 03 Civ. 2337(GEL), 2004 WL 1497606 (S.D.N.Y. July 2, 2004) (citing Furia v. Furia, 498 N.Y.S.2d 12, 13 (2d Dep't 1986).

Plaintiff has alleged adequately the existence of a contract. Even if, as Defendant argues, Plaintiff's allegations regarding the advertising campaign are insufficient to allege the existence of a contract, see Geismar v. Abraham & Strauss, 439 N.Y.S.2d 1005, 1006 (N.Y. Dist. Ct. 1981), Plaintiff's allegations that he and Wendy's entered into a contract when he paid for the fried food products, (Compl. ¶ 34), are sufficient. See Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 124 (S.D.N.Y. 1999) ("Under these principles, plaintiff's letter of March 27, 1996, with the Order Form and the appropriate number of Pepsi Points, constituted the offer. There would be no enforceable contract *until defendant accepted the Order Form and cashed the check.*") (emphasis added)). The Complaint also adequately alleges that the food contracted for was supposed to be trans fat free or only contain nominal amounts of trans fat; the Complaint alleges that Nutrition Posters, displaying the very trans fat values specified in the national advertising campaign, were placed near where Wendy's patrons placed their orders. (Compl. ¶ 30.) Construing the allegations in the light most favorable to Plaintiff, it cannot be said at this stage of the proceedings that a nutritional disclaimer not specifically mentioning trans fats negated any possibility of a finding that Wendy's entered into and breached a contract regarding trans fat levels with Plaintiff. Plaintiff has also sufficiently alleged that he performed, by paying the purchase price, and that Defendant failed to perform, by providing fried foods with greater than contracted for trans fat contents. (Compl. ¶¶ 35-36.) As discussed in the preceding section, Plaintiff has sufficiently alleged that he suffered

damages as a result of this breach: he has alleged both that he paid a content-related premium for the Wendy's products that he purchased and that he unknowingly ingested unsafe amounts of trans fats. (Compl. ¶¶ 12, 30.)

Unjust Enrichment Claim

To state a claim for unjust enrichment, a plaintiff must allege that: (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). A claim for unjust enrichment may be pleaded in the alternative. Auguston v. Spry, 723 N.Y.S.2d 103, 106 (2d Dep't 2001). Plaintiff has adequately plead a claim for unjust enrichment. As described in the preceding sections of this Order, Plaintiff has alleged that he paid a premium for Wendy's food products that was based on inaccurate representations regarding the trans fat content of those products. See Cox v. Microsoft Corp., 778 N.Y.S.2d 147, 149 (1st Dep't 2004) ("plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment").

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Amended Complaint is denied.

SO ORDERED.

Dated: New York, New York
November 15, 2007

LAURA TAYLOR SWAIN
United States District Judge