**GUTRIDE SAFIER REESE LLP**
Michael R. Reese
Kim E. Richman
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

-and-

**DREIER LLP**
Lee A. Weiss
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Facsimile: (212) 328-6101



*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM JERNOW and LEAH McLAWRENCE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WENDY'S INTERNATIONAL, INC.,<br><br>Defendant. | No. 07-CV-3971 (LTS) (THK)<br><br><u>CLASS ACTION</u><br><br>SECOND AMENDED COMPLAINT FOR DECEPTIVE SALES PRACTICES; BREACH OF IMPLIED IN FACT CONTRACT; UNJUST ENRICHMENT<br><br><u>DEMAND FOR JURY TRIAL</u> |

## SUMMARY AND OVERVIEW

Plaintiffs, Adam Jernow and Leah McLawrence, by and through their counsel, allege the following based upon their own personal knowledge and the investigation of their counsel. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a proposed class action against Wendy's International, Inc. ("Wendy's" or "Defendant") for misleading consumers about the level of trans fatty acids ("trans-fats") in Wendy's food products.  Specifically, during the period from June 2006 to the present (the "Class Period"), Wendy's falsely stated the amount of trans-fats in its food products, leading consumers to believe the level of trans-fats in Wendy's food was nominal or non-existent, when, in fact the true levels of trans-fats were as much as *500 percent greater* than those claimed by Wendy's.

2.      The presence of trans-fats in food is a leading health risk for Americans. Numerous studies have shown the consumption of trans-fats to be a significant health risk leading to an increase in heart attacks, other coronary disease and death.  Numerous esteemed studies have concluded that no levels of trans-fats are safe.  Because of this health risk, several countries have banned trans-fats and several U.S. cities – including New York City - are in the process of imposing trans-fats bans.

3.      Following on the health concerns presented by trans-fats, in June 2006, Wendy's engaged in a nationwide marketing campaign to promote that it was practically eliminating trans-fats in its french fries, chicken sandwiches and other fried products.  Among other representations, Wendy's claimed it would reduce the amount of trans-fats in its products so that in the french fries that are part of Wendy's Kids' Meal, the measurable amount of trans-fat

would be zero, and that its other fried food products would contain nominal amounts of 0.5 grams or less.

4.    Independent studies have shown, however, that Wendy's representations regarding the level of trans-fats in its products were materially false and misleading. Specifically, these studies, conducted by separate independent laboratories hired by Consumer Reports and plaintiff's counsel, reveal that the levels of trans-fats contained in Wendy's food are significantly higher, as much as 500% higher, than the amounts Wendy's discloses to the public.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed plaintiffs, who, as alleged below, are citizens of New York, and defendant, which, as alleged below, is a citizen of Ohio.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding trans-fats, occurred within this District.  Additionally, there are over twenty Wendy's restaurants in this District.

## PARTIES

7.    Plaintiff Adam Jernow ("Jernow") is a citizen of New York because Mr. Jernow is domiciled in New York County, New York and has no intention of changing his domicile. Jernow purchased Wendy's french fries and fried chicken products during the Class Period containing higher levels of trans-fats than represented.  Plaintiff Jernow suffered injury in that he would not have bought the french fries and fried chicken products nor paid a premium for them had the true amount of trans-fats been disclosed.

2

8.    Plaintiff Leah McLawrence ("McLawrence") is a citizen of New York because she is domiciled in Kings County, New York and has no intention of changing her domicile. Plaintiff McLawrence purchased Wendy's french fries and fried chicken products during the Class Period containing higher levels of trans-fats than represented. Plaintiff McLawrence suffered injury in that she would not have bought the french fries and fried chicken products nor paid a premium for them had the true amount of trans-fats been disclosed.

9.    Collectively, plaintiffs Jernow and McLawrence are herein referred to as "Plaintiffs."

10.    Defendant Wendy's is a citizen of Franklin County, Ohio. It is incorporated in and has its principal place of business in Ohio. Defendant is a restaurant operating and franchising company, with more than 6,300 Wendy's restaurants doing business in the United States and Canada. In 2006, the most recent year for which Wendy's annual financial information is available to the public, Wendy's reported $2.4 billion in sales.

## SUBSTANTIVE ALLEGATIONS

11.    Trans-fats are a major health concern for all Americans and have been cited as a leading cause of heart disease and death. For example, the Harvard School of Public Health reports that:

> [E]ating trans-fats increases levels of low-density lipoprotein (LDL, "bad" cholesterol), especially the small, dense LDL particles that are most damaging to arteries. It lowers levels of high-density lipoprotein (HDL) particles, which scour blood vessels for bad cholesterol and truck it to the liver for disposal. It increases the tendency of blood platelets to clump and form potentially artery-blocking clots. It also fires inflammation, an overactivity of the immune system that has been implicated in heart disease, stroke, diabetes, and other chronic conditions.
>
> *This four-pronged attack on blood vessels translates into heart disease and death. Researchers estimate that eliminating trans fats from the U.S. food supply could prevent between 6 and 19 percent of heart attacks and related deaths each year--a staggering number, given that there are 1.2 million heart attacks and related deaths in the U.S. annually.*

3

*See* http://www.hsph.harvard.edu/nutritionsource/transfats.html (last visited February 14, 2007) (emphasis added).

12.    Several scientific studies have concluded that no level of trans-fats are safe and that all trans-fats should be eliminated from a person's diet. *See, e.g., National Academy of Sciences citing Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* ("there is no safe level of trans fats, and people should eat as little of them as possible while consuming a nutritionally adequate diet") at http://www.nationalacademies.org/headlines/20061212.html (last visited March 1, 2007).

13.    Wendy's is one of largest chain restaurants in the world.  Wendy's distinguishes itself from competitors such as McDonalds, Kentucky Fried Chicken and other "fast-food" providers by portraying itself as a healthy alternative that offers fresh, quality food. *See, e.g.,* http://www.wendys.com/about_us/  (last visited, February 14, 2007).  For example, in the late 1970s, Wendy's was one of the first chain restaurants of its kind to introduce salad bars. Wendy's has continued this emphasis on healthy food through present day.  In the latter half of 2005, Wendy's introduced a nationwide advertising campaign that continues to run today, entitled "Do What Tastes Right" that emphasized that Wendy's food was fresh, of high quality and healthy.

14.    Because of its representations that it serves quality, healthy food, Wendy's is able to charge customers a premium for its food compared to the prices set by its competitors.  For example, as stated in a Forbes article on Wendy's: "Cutting costs and chasing market share with lower-quality food was something [CEO] Thomas would never abide at Wendy's and that approach has paid off handsomely. Customers are willing to pay more for extra quality in their fast foods, and that has insulated sales during the recent economy downturn." http://www.forbes.com/2002/01/15/0115bigcap.html

15.    In 2006, recognizing the significant health and business risks posed by the presence of trans-fats in its food, Wendy's engaged in a nationwide marketing campaign claiming that it was significantly cutting trans-fats from its food.  For example, in a June 8, 2006 nationwide press release, Wendy's stated the following:

**See what's new, learn the facts.**

**June 8, 2006**

Wendy's Significantly Cuts Trans Fats — Switch to New Cooking Oil Under Way

**All Breaded Chicken Products Will Have Zero Grams of Trans Fats; French Fries to Range from Zero to 0.5 Grams**

In a move that significantly reduces trans fatty acids (TFAs) on its menu, Wendy's® is making the switch to non-hydrogenated cooking oil for its French fries and breaded chicken items. The oil has zero grams of trans fat per serving.

Wendy's announced today that its 6,300 U.S. and Canadian restaurants are scheduled to switch to the new blend of corn and soy oil beginning in August.

Wendy's breaded chicken sandwiches, nuggets and strips will have zero grams of trans fat. Depending on the serving size, trans fats in French fry offerings will range from zero to 0.5 grams. Kids' Meal nuggets and fries will have zero grams of trans fat.

Nutrition Information - Wendy's U.S.

| FRENCH FRIES | Previous TFAs | New TFAs |
|---|---|---|
| Kids' Size | 3.5 grams | 0 grams |
| Small | 5 grams | 0.5 grams |
| Medium | 6 grams | 0.5 grams |
| Large | 7 grams | 0.5 grams |
| | | |
| CHICKEN | Previous TFAs | New TFAs |

| | | |
|---|---|---|
| Homestyle Chicken Sandwich | 1.5 grams | 0 grams |
| Spicy Chicken Sandwich | 1.5 grams | 0 grams |
| Chicken Nuggets - 5 pc. | 1.5 grams | 0 grams |
| Chicken Strips | 3 grams | 0 grams |

16.    As part of its nationwide marketing campaign regarding the purported reduction and elimination of trans-fats from its food, Wendy's changed the packaging of the bags in which it food is placed to read in bold letters:

Do What Tastes Right.

Wendy's cooking oil has 0 g trans-fat.

17.    Additionally, inside its restaurants, Wendy's placed a "nutritional information" display next to where customers stood in line to place their orders. This display stated that the level of trans-fats in Wendy's french fries was 0 grams for the Kids' Meal size and 0.5 grams for all other sizes. This display also stated that Wendy's fried chicken products (*i.e.*, chicken strips, chicken sandwiches and chicken nuggets) contained 0 grams of trans-fats. These statements by Wendy's were false, as the level of trans-fats in Wendy's food products were, and remain, actually much higher than that stated by Wendy's.

18.    In November 2006, *Consumer Reports* published an article that revealed the true level of trans-fats in Wendy's food. Based upon testing by an independent laboratory hired by Consumer Reports to examine various Wendy's food products that Wendy's claimed had either no, or nominal levels of, trans-fats, the article stated that the actual levels of trans-fats in the food products were as much as ***500% higher than the amount stated by Wendy's***.

6

*Consumer Reports  tests find trans fats in Wendy's fries*

In August fast-food chain Wendy's announced that it had switched to a healthier, nonhydrogenated cooking oil and had rid its french fries of nearly all trans fats. The change, according to the company, meant that the kid-sized fries and breaded chicken sold at all of Wendy's 6,000 U.S. restaurants had no unhealthy trans fats, while small, medium, and large french fries, once loaded with 5 to 7 grams of trans fats, now had just 0.5 grams.

Consumer Reports purchased large servings of fries from three Wendy's restaurants in Westchester County, N.Y., in early September. We sent the fries to an independent lab for fatty-acid analysis. We were surprised to find that the lab tests showed the fries contained significantly more trans fat than the 0.5 grams per serving claimed by Wendy's. To double-check the findings, we purchased fries from the same restaurants at the end of September and sent them to the same lab plus another independent lab for a second set of analyses, which confirmed our initial findings. The average amount of trans fat per serving was 2.5 grams.

When asked about the findings, Wendy's representatives said the company had rigorously tested and analyzed the fat content of its fries working with an independent lab. But our tests, based on the same method that Wendy's told us it used, throw doubt on the company's claims.

19.     On February 9, 2007, plaintiffs' counsel had an independent laboratory conduct an examination of Wendy's french fries.  The results of these tests confirmed that Wendy's had misrepresented, and continues to misrepresent, the amount of trans-fats in its food products. Specifically, the tests revealed that the small size french fries that Wendy's claims had only 0.5 grams of trans-fats in fact has 1.3 grams of trans-fats -- **or more than 250%**.

## CLASS ALLEGATIONS

20.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased french-fries, chicken sandwiches or any other deep-fat fried products (collectively, "fried food products") from Wendy's during the Class Period (the "Class").  Excluded from the Class are officers and directors of the Company, members of the immediate families of the officers and directors of the Company, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

21.    At this time, plaintiffs do not know the exact number of Class members; how-ever, given the nature of the claims and the number of Wendy's restaurants in New York, plaintiffs believe that Class members are so numerous that joinder of all members of the Class is impracticable.

22.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether Wendy's labeled, marketed, advertised and/or sold fried food products to plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the quantity of trans-fats in those products;

(b)    Whether Wendy's omitted and/or misrepresented material facts in connection with the sales of its fried food products;

(c)    Whether Wendy's participated in and pursued the common course of con-duct complained of herein;

(d)    Whether Wendy's labeling, marketing, advertising and/or selling of certain fried food products as "trans-fat free" constitutes an unfair or deceptive consumer sales practice; and

(e)    Whether Defendant was unjustly enriched.

23.    Plaintiffs' claims are typical of those of the Class because plaintiffs, like all members of the Class, purchased fried food products from Wendy's in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

8

24.     Plaintiffs will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class.

25.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Civ. R. 23(B)(2) are met as Wendy's has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

27.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Wendy's. For example, one court might enjoin Wendy's from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

28.     Wendy's conduct is generally applicable to the Class as a whole and plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Wendy's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## COUNT I
## (DECEPTIVE SALES PRACTICES - N.Y. GEN. BUS. § 349)

29.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Complaint as if set forth herein.

30.    By continuously falsely representing during the Class Period that its fried food products were either "trans-fat free" or contained nominal amounts of trans-fats, Wendy's engaged in material, deceptive, consumer-oriented acts, in the conduct of its business, that injured plaintiffs and all others similarly situated, in violation N.Y. Gen. Bus. § 349 (2007).

31.    Specifically, Wendy's engaged in a nationwide marketing campaign, aimed at consumers, which falsely represented that its fried food products were either "trans-fat free" or contained nominal amount of trans-fats. Wendy's declared that its decision to eradicate trans-fats from its fried food products "would enhance the nutritional profile" of its food and cited the 2005 Dietary Guidelines for Americans which recommends that individuals "consume as little trans fat as possible as part of a healthful diet."

32.    In light of the significant health problems caused by consuming trans-fats, Wendy's representations regarding the level of trans-fats in its fried food products were important to plaintiffs and all others similarly situated, and likely to affect their choices concerning these products. Plaintiffs and all others similarly situated purchased Wendy's fried food products believing them to be "trans-fat free" or containing only nominal amounts of trans-fats. Plaintiffs and all others similarly situated were injured by Wendy's deceptive acts because they unknowingly ingested foods that contained unsafe amounts of trans-fats.

33.    As a direct and proximate cause of defendant's violation of N.Y. Gen. Bus. § 349 (2007), plaintiffs and all others similarly situated have been damaged in an amount that will be proven at trial.

## COUNT II
## (BREACH OF IMPLIED IN FACT CONTRACT)

34.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Complaint as if set forth herein.

35.    Wendy's, through its labeling, advertising and marketing of fried food products, made uniform representations and offers regarding the quality of its products, namely that they were either "trans-fat free" or only contained nominal amounts of trans-fats. When Wendy's announced, on August 24, 2006, that it had completed the transition to cooking with oil containing zero grams of trans fats, it stated, "Wendy's has kept its promise to its customers."

36.    Plaintiffs and all others similarly situated accepted Wendy's offer to purchase trans-fat free food and food containing only nominal amounts of trans-fats, and gave consideration by paying the purchase price of the fried food products. Specifically, during the Class Period, plaintiffs entered into an implied-in-fact contract with Wendy's for the purchase of french fries and fried chicken products that were trans-fat free or contained only nominal amounts of trans-fats. Persons similarly situated to plaintiffs entered into implied-in-fact contracts with Wendy's when they purchased its fried food products.

37.    Plaintiffs and all others similarly situated performed all of their obligations under the contracts by paying for such products.

38.    In fact, Wendy's fried food products were not either "trans-fat free" or only containing nominal amounts of trans-fats. As such Wendy's breached its implied-in-fact contracts with plaintiffs and all others similarly situated. Additionally, Wendy's breached the implied-in-fact contracts with plaintiffs and those similarly situated, including the implied covenant of good faith and fair dealing, by knowingly failing to provide plaintiffs, and those

11

similarly situated, with the products they desired, paid consideration for, and thought that they were receiving.

39.    Plaintiffs, and all others similarly situated, had a legal capacity to enter into the aforementioned implied-in-fact agreements.

40.    As a direct and proximate result of the breaches set forth herein, plaintiffs and all others similarly situated have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

**COUNT III**
**(UNJUST ENRICHMENT)**

41.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Complaint as if set forth herein.

42.    As a result of Wendy's deceptive, fraudulent, and misleading labeling, advertising, marketing and sales of its fried food products, defendant was enriched, at the expense of plaintiff and all others similarly situated, through the payment of the purchase price for the fried food products.

43.    Under the circumstances, it would be against equity and good conscience to permit Wendy's to retain the ill-gotten benefit(s) that it received from plaintiffs and all others similarly situated in light of the fact that the fried food products purchased by plaintiffs and all others similarly situated were not what Wendy's purported them to, namely trans-fat free or containing only nominal amounts of trans-fats. Thus, it would be unjust or inequitable for Wendy's to retain the benefit without restitution to plaintiffs and all others similarly situated for the monies paid to Wendy's for such products.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to F.R.C.P. 23 of a class of all persons who purchased Wendy's fried food products during the Class Period and appointing plaintiffs as representatives for the Class and their counsel as Class Counsel;

B.      Awarding plaintiffs and the members of the Class compensatory damages in an amount in excess of $5,000,000.00 and all monetary relief referenced in this Complaint;

C.      Ordering Wendy's to pay restitution to plaintiffs and members of the Class an amount that is the equivalent of the amount acquired by means of any unfair, deceptive, fraudulent, unconscionable, or negligent act as referenced in this Complaint;

D.      Ordering Wendy's to disgorge any ill-gotten benefits received from plaintiffs and members of the Class as a result of Wendy's false, deceptive or misleading labeling, marketing and advertising of its fried food products;

E.      Awarding reasonable costs and attorneys' fees;

F.      Awarding applicable pre-judgment or post-judgment interest; and

G.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 25, 2008

**GUTRIDE SAFIER REESE LLP**

By: *Michael Reese* /RT

Michael R. Reese
Kim E. Richman
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone:  (212) 579-4625
Facsimile:  (212) 253-4272

- and -

**DREIER LLP**
Lee A. Weiss
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Facsimile:  (212) 328-6101

*Attorneys for Plaintiffs*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused a true and correct copy of Second Amended Complaint for Deceptive Sales Practices; Breach of Implied in Fact Contract; Unjust Enrichment to be served upon the following via electronic mail on the 25th day of January 2008:

Thomas P. McLish
tmclish@akingump.com
Troy D. Cahill
tcahill@akingump.com
**Akin Gump Strauss Hauer & Feld, LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

*Counsel for Defendant Wendy's International, Inc.*

Rebecca Tingey