THOMAS P. MCLISH (*admitted pro hac vice*)
tmclish@akingump.com
JAMES J. SCHESKE
jscheske@akingump.com
TROY D. CAHILL
tcahill@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone:      (202) 887-4000
Facsimile:      (202) 887-4288

*Attorneys for Defendant Wendy's International, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM JERNOW and LEAH McLAWRENCE, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>WENDY'S INTERNATIONAL, INC.,<br><br>          Defendant. | Case No. 07-CV-3971 (LTS) (THK)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**<u>FILED UNDER SEAL PURSUANT TO JANUARY 23, 2008 PROTECTIVE ORDER</u>**<br><br>**\*\*Pursuant to paragraph 2.J of Judge Swain's Individual Practices, Defendant requests oral argument on Plaintiffs' Motion for Class Certification** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... *i*

TABLE OF AUTHORITIES........................................................................................... *iii*

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................2

      A.     Trans fat ....................................................................................................2

      B.     Wendy's announces a change of its in-store cooking oil .............................3

      C.     Wendy's completes the transition to in-store cooking oil with 0 grams trans fat.....................................................................................................3

      D.     Wendy's pricing .......................................................................................4

      E.     Consumer Reports....................................................................................5

      F.     The named Plaintiffs .................................................................................5

III.    ARGUMENT .......................................................................................................6

      A.     Plaintiffs Must Prove That All Class Action Prerequisites Are Met And That The Suit Is Maintainable As A Class Action.......................................6

      B.     Plaintiffs Have Failed to Satisfy The Requirements Of Rule 23(b)(3)........7

             1.     No Class Can Be Certified Under Rule 23(b)(3) Because Individual Issues Predominate Over Any Common Questions For Each Claim...........................................................................................7

                a.     Misrepresentation Claims Under The New York Consumer Protection Act Are Inherently Unsuited For Class Certification .....8

                    i.    Individual inquiries are necessary to determine whether each potential class member saw or heard a misleading or deceptive representation..........................................................................8

                    ii.   Plaintiffs cannot provide classwide proof that the alleged representation by Wendy's caused actual injury to each potential class member ..........................................................11

                        (1)    Plaintiffs' claim that Wendy's trans fat statements caused increased sales of French fries, at a premium price, can only be established with individualized proof..................................................................12

(2)     Individual inquiries will be required to establish whether each plaintiff actually based their purchasing decision on Wendy's statements ..........14

(3)     Individualized proof is needed to determine whether proposed class members had full knowledge of the  facts before purchasing Wendy's French fries ..............................................15

iii.  Plaintiffs do not have classwide proof of injury .....................16

b.    Plaintiffs Cannot Provide Classwide Proof Of A  Breach of Implied In Fact Contract ............................................................17

i.    Plaintiffs cannot show by classwide proof that a valid classwide contract existed.........................................................17

ii.   Damages for breach of implied in fact contract cannot be proven by classwide proof .......................................................18

c.    Plaintiffs' Unjust Enrichment Claims Cannot Be Proven By Classwide Proof ....................................................................19

d.    Calculation Of Damages Will Require Extensive Individualized Determination ................................................................20

2.    Plaintiffs Have Failed to Demonstrate That Class Certification Is Superior To Other Methods of Adjudication.............................20

C.    Plaintiffs Have Failed To Meet the Requirements of Rule 23(a).............. 22

1.    Plaintiffs' Claims Present Few Common Questions Of Law And Fact.............................................................................22

2.    Jernow's And McLawrence's Claims Are Not Typical .................22

3.    Jernow And McLawrence Are Not Adequate Representatives ......24

IV.    CONCLUSION.................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Alicea v. Circuit City Stores, Inc.,*
  2008 WL 170388 (S.D.N.Y Jan. 22, 2008) ................................................................21

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ....................................................................................6, 8, 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007) ..........................................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ..........................................................................................23

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) .......................................................................................................6

*Clay v. Am. Tobacco Co.,*
  188 F.R.D. 483 (S.D. Ill. 1999) ...................................................................................19

*Dungan v. The Academy at Ivy Ridge,*
  2008  WL 2058448 (N.D.N.Y. May 14, 2008) ....................................................13, 20

*Dupler v. Costco Wholesale Corp.,*
  2008 WL 321776 (E.D.N.Y. Jan. 31, 2008) ...............................................................11

*First Nationwide Bank v. Gelt Funding Corp.,*
  27 F.3d 763 (2d Cir. 1994) ..........................................................................................13

*Freedman v. Arista Records, Inc.,*
  137 F.R.D. 225 (E.D. Penn. 1991) ...............................................................................14

*Gen. Tel. Co. v. Falcon,*
  457 U.S. 147 (1982) ............................................................................................7, 8, 22

*Haley v. Medtronic, Inc.,*
  169 F.R.D. 643 (C.D. Cal. 1996) .................................................................................21

*In re Cannon Cameras,*
  237 F.R.D. 357 (S.D.N.Y. 2006) .................................................................................20

*In re Currency Conversion Fee Antitrust Litig.,*
  230 F.R.D. 303 (S.D.N.Y. 2004) ........................................................................7, 8, 16

*In re LifeUSA Holding, Inc.,*
    242 F.3d 136 (3d Cir. 2001) ..............................................................................21

*In re Visa Check/Mastermoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001) ..............................................................................7

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000) ..............................................................................19

*Leider v. Ralfe,*
    387 F. Supp. 2d 283 (S.D.N.Y. 2005) ..............................................................20, 24

*Lewis Tree Service, Inc. v. Lucent Techs. Inc.,*
    211 F.R.D. 228 (S.D.N.Y. 2002) ......................................................................22

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................24, 25

*Macaluso v. U.S. Life Ins. Co.,*
    2004 WL 1497606 (S.D.N.Y. July 2, 2004) ......................................................17

*McLaughlin v. Am. Tobacco Co.,*
    522 F.3d 215 (2d Cir. 2008) .................................................................... *passim*

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.),*
    471 F.3d 24 (2d Cir. 2006) ..............................................................................6, 8

*Morgan v. Markerdown Corp.,*
    201 F.R.D. 341 (Dist. N.J. 2001) ......................................................................14

*Newman v. RCN Telecom Services, Inc.,*
    238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................15

*People United for Children, Inc. v. City of New York,*
    214 F.R.D. 252 (S.D.N.Y. 2003) ......................................................................8

*Perez v. Metabolife Int'l, Inc.,*
    218 F.R.D. 262 (S.D. Fla. 2003) ......................................................................7

*Russo v. Banc of America Securities, LLC,*
    2007 WL 1946541 (S.D.N.Y. June 28, 2007) ..................................................17

*Spann v. AOL Time Warner, Inc.,*
    219 F.R.D. 307 (S.D.N.Y. 2003) ......................................................................23, 25

*White v. Microsoft Corp.*,
   454 F. Supp. 2d 1118 (S.D. Ala. 2006) ...................................................................19

*Williams v. Balcor Pension Investors*,
   150 F.R.D. 109 (N.D. Ill. 1993) ......................................................................23, 25

**STATE CASES**

*Carnegie v. H&R Block*,
   703 N.Y.S.2d 27 (1st Dept. 2000) .........................................................................9

*Dillon v. U-A Columbia Cablevision of Westchester*,
   100 N.Y. 2d 525 (N.Y. 2003) ..............................................................................24

*Furia v. Furia*,
   498 N.Y.S.2d 12 (2d Dept. 1986) .........................................................................17

*Gross v. Ticketmaster*,
   2004 WL 2339808 (N.Y. Sup. Ct. 2004) ...............................................................18

*In re Coordinated Title Ins. Cases*,
   2004 WL 690380 (N.Y. Sup. Ct. Jan. 8, 2004) .....................................................11

*Ridge Meadows Homeowners' Ass'n, Inc. v. Tara Dev. Co., Inc.*,
   665 N.Y.S.2d 361 (4th Dept. 1997) ......................................................................22

*Small v. Lorillard Tobacco Co.*,
   679 N.Y.S.2d 593 (1st Dept. 1998) .......................................................................10

*Solomon v. Bell Atlantic Corp.*
   777 N.Y.S.2d 50 (1st Dept. 2004) ................................................................ *passim*

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (N.Y. 2000) .....................................................................................8

**FEDERAL STATUTES**

   18 U.S. C. § 1964(c) .............................................................................................12

**STATE STATUTES**

   N.Y. Gen. Bus. Law § 349(h) ..........................................................................12, 21

**<u>RULES</u>**

FED. R. CIV. P. 23 ......................................................................................................... *passim*

§ 901(b) NEW YORK CIVIL RULES....................................................................................21

Defendant Wendy's International, Inc. ("Wendy's") respectfully submits this Opposition to Plaintiffs' Motion for Class Certification.

## I.    <u>INTRODUCTION</u>

Plaintiffs claim that Wendy's induced them to pay a price premium for French fries by making misrepresentations about the amount of trans fat in the cooking oil Wendy's uses to make the French fries. This Court previously described Plaintiff's allegations of injury in this case as "weak." Mem. Order (Dkt. 23) at 6. Since then, the named Plaintiffs have admitted that they suffered no economic or physical injury at all. They have also admitted that they continued to purchase and consume Wendy's French fries <u>after</u> they supposedly concluded that Wendy's was misrepresenting the amount of trans fat level of its French fries.

In addition to lacking any merit, Plaintiffs' claims fall far short of satisfying the requirements for class certification set forth in Rule 23. Plaintiffs seek to certify a class of all New York residents who purchased Wendy's French fries in this State from June 8, 2006 to the present. Yet, class certification is plainly inappropriate here for the same reasons that courts routinely reject class treatment in cases like this one: issues requiring individualized inquiry abound. Individualized inquiries are necessary to determine, among other things, (1) whether each putative class member saw or heard the alleged representation, (2) whether the alleged representation was false or deceptive as to that person; (3) whether the alleged representation had a causal effect on the individual's purchase decision, and (4) whether the putative class member suffered an actual injury (i.e., paid the alleged price premium).

Plaintiffs ignore these key issues. Indeed, they inexplicably ignore the Second Circuit's recent decision in *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226-27 (2d Cir. 2008), which rejected class certification arguments almost identical to the ones advanced by Plaintiffs here,

including the "price premium" theory of injury.  For example, Plaintiffs' § 349 claim requires proof of causation, but as the Second Circuit held, causation in cases like this one "cannot be resolved by way of generalized proof."  *See McLaughlin*, 522 F.3d at 226-27.  That Plaintiffs find room in their brief to repeatedly and spuriously compare trans fat to "rat poison," but fail even to discuss a recent binding Court of Appeals decision that rejects their arguments, speaks volumes as to the merit of Plaintiffs' motion.

The vast number of issues in this case that are not subject to classwide proof, but can only be addressed on an individual-by-individual basis, are set out in the accompanying expert declaration of Keith R. Ugone, Ph.D. attached as Exhibit ("Ex.") 1 to the Declaration of Troy D. Cahill.[1]  The trial of Plaintiffs' claims as a class action would undoubtedly present insurmountable trial management problems because individualized questions and evidentiary issues will predominate.  As such, class certification would not serve the principal purposes of the class action procedure – promotion of efficiency and economy of litigation.  For all these reasons, and those discussed below, Plaintiffs' motion for class certification should be denied.

## II.    FACTUAL BACKGROUND

### A.    Trans fat

Trans fat (also known as trans fatty acids) is a specific type of fat that occurs naturally in animal-based foods like meat and dairy.  Ex. 2, Questions and Answers about Trans Fat Nutrition Labeling published by the United States Food and Drug Administration ("FDA") at 3.  Artificial trans fats are formed when liquid oils are made into solid fats through a process called hydrogenation.  *Id.*  The use of hydrogenated oils expanded in the late 20th Century due, in part,

---

[1] References hereinafter to "Ex. __" refer to exhibits attached to the Declaration of Troy D. Cahill Regarding Exhibits to Defendant's Opposition to Plaintiffs' Motion for Class Certification filed contemporaneously with this opposition.

to a shift away from saturated fats in response to scientific community and consumer concerns about cardiovascular disease.

On July 9, 2003, the FDA promulgated a rule requiring manufacturers to list trans fat on the Nutrition Facts panel of packaged foods and some dietary supplements. *Id.* at 9. The rule went into effect on January 1, 2006. *Id.* In adopting the labeling requirement, the FDA did not ban the use of trans fat, did not establish a recommended daily allowance for trans fat, and did not require restaurants to disclose trans fat content in food. In fact, the FDA expressly noted that consumers should not eliminate trans fat from their diet entirely. *Id.* at 5.

Although not subject to the FDA rule regarding trans fat labeling, Wendy's recognized that some experts suggest that people limit their combined intake of saturated and trans fat to no more than 10% of their total caloric intake. In accord with its history as an innovator in the quick service restaurant industry, Wendy's began to work to decrease and ultimately eliminate trans fat in its food.

**B.     Wendy's announces a change of its in-store cooking oil**

After extensive testing, Wendy's announced that it was switching to non-hydrogenated in-store cooking oil containing 0 grams trans fat per serving for its French fries. Ex. 3, June 8, 2006 Press Release (the "June 2006 Press Release"). The press release stated that the transition to the new in-store cooking oil would begin in August 2006. It also stated that Wendy's was "working directly with its French fry suppliers to further reduce trans fats that occur as part of the par frying process at their facilities, with a goal of zero grams." *Id.*

**C.     Wendy's completes the transition to in-store cooking oil with 0 grams trans fat**

On August 24, 2006 (the "August 2006 Press Release"), Wendy's announced that the transition to the new non-hydrogenated, 0 grams trans fat in-store cooking oil was complete. The

August 2006 Press Release reiterated that Wendy's suppliers had not changed the parfry oil, again stating that the company was "working directly with its French fry suppliers to further reduce trans fats that occur as part of the par frying process at their facilities, with a goal of zero grams." Ex. 4, August 2006 Press Release.

The switch in cooking oil drastically reduced the trans fat levels of Wendy's French fries. Prior to the switch, trans fat levels ranged from 3.5 to 7 grams, depending on order size. Wendy's testing, performed by independent third parties in accordance with FDA standards, indicated that the switch reduced trans fat levels to a range of 0 to .5 grams, depending on order size. Ex. 5, April 2006 Covance Report of Analysis and Ex. 6, April 2006 Cargill Analysis.

Wendy's, which had made in-store nutrition brochures available to customers since 2003, introduced an in-store nutrition poster in September 2006. The posters accurately stated the trans fat levels of the different sizes of Wendy's French fries, as determined by Wendy's testing, and that Wendy's cooking oil contained 0 grams trans fat. Wendy's revised some of its packaging to accurately state that Wendy's cooking oil contains 0 grams of trans fat.

### D.    Wendy's pricing

The prices consumers pay for Wendy's French fries are not uniform at every one of Wendy's approximately 6,300 locations, but rather vary for a number of reasons. Ex. 1, Ugone Decl. at ¶¶ 25-27. Wendy's franchisees, for example, are free to set their own prices rather than follow Wendy's recommendation, and many do. *Id.* at ¶ 26. Prices vary among the company-owned stores as well, to account for higher costs of business in places like New York City. Wendy's pricing strategy for its French fries during the relevant period has been based upon competitive considerations. *Id.* at ¶ 25 n.33. Throughout this period, Wendy's French fry prices have generally been lower than those of its major competition, McDonald's and Burger King. *Id.*

The company did not raise it prices or charge a "premium" for its French fries as a result of its switch to the 0 grams trans fat cooking oil. The July 2006 price increase of $.10 for medium and large size French fries was not based, in whole or in part, on the reduction in trans fats. Ex. 7, Minton Dep. at 89:14-89:18.

### E.    Consumer Reports

In November of 2006, *Consumer Reports* claimed to have tested the trans fat content of French fries purchased from <u>three</u> Wendy's restaurants located in Westchester County, New York. Ex. 8, November 2006 *Consumer Reports*. *Consumer Reports* concluded, based on an undisclosed methodology by an unknown laboratory, that the trans fat content of the French fries at those three locations was higher, on average, than Wendy's stated. *Id.*

*Consumer Reports* also acknowledged that Wendy's had significantly reduced the trans fat level of its French fries and that the trans fat level of its French fries was far lower than those sold by Burger King and McDonald's:

> The good news for Wendy's lovers is that the large fries we tested contained <u>significantly</u> <u>less</u> <u>trans</u> <u>fat</u> than the 7 grams they had before the announced cooking-oil change. And Wendy's large fries contain <u>less</u> <u>than</u> <u>half</u> <u>as</u> <u>much</u> <u>trans</u> <u>fat</u> as large fries from Burger King or McDonald's, which each had about 6 grams of trans fats in our tests.

*Id.* (emphasis added).

### F.    The named Plaintiffs

The two named Plaintiffs in this action, Adam Jernow and Leah McLawrence, claim that they were misled into believing that Wendy's food is "trans fat free." Ex. 9, Jernow Dep. at 115-16 and Ex. 10, McLawrence Dep. at 69-71. Neither of them, however, claims to have suffered any physical or monetary injury as a result. Ex. 9, Jernow Dep. at 139:13-15 and 140:2-5; Ex. 10, McLawrence Dep. at 58:4-12 and 84:17-22.

Jernow claims to have eaten Wendy's French fries three times during the proposed class period (June 2006 to the present).  Two of those occasions were <u>before</u> Wendy's even claimed to have made the switch to 0 grams trans fat cooking oil.  His third visit to Wendy's was <u>after</u> he had filed this lawsuit in which he claims that Wendy's misrepresents the trans fat content of its French fries.  Ex. 9, Jernow Dep. at 67:10-13; 71:9-15; and 66:1-15.  During the proposed class period, Jernow continued to purchase and consume French fries and other foods that contained trans fat levels higher than those contained in Wendy's French fries.  *Id.* at 100-103.

McLawrence claims to have eaten Wendy's French fries 34-36 times since 2006.  Like Jernow, some of those instances occurred <u>after</u> she joined this litigation.  Ex. 10, McLawrence Dep. at 46:2-14.  Despite her knowledge that trans fat is found in all fried foods, McLawrence acknowledged that it is her usual practice to order French fries and other foods with trans fats when dining out.  *Id.* at 53:11-14; 55:2-14.  And although she claims she would not have eaten Wendy's French fries during the class period had she known of the alleged misrepresentation, McLawrence nonetheless continued to eat foods containing more trans fat than Wendy's French fries.  *Id.* at 52:15-21 and 54:6-18.

## III.    ARGUMENT

### A.    Plaintiffs Must Prove That All Class Action Prerequisites Are Met And That The Suit Is Maintainable As A Class Action

Class actions are an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties."  *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).  Class actions are permitted only when the economies promoted can be achieved "without sacrificing procedural fairness."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Plaintiffs carry the burden of proving that Rule 23's requirements have been satisfied.  *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 27 (2d Cir. 2006).

Plaintiffs must provide more than bare allegations that they have satisfied the Rule 23 requirements. *Id.* A court cannot permit an action to proceed as a class action unless it determines, "after a rigorous analysis," that all Rule 23 requirements are met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Failure to satisfy any of the Rule 23(a) prerequisites – numerosity, commonality, typicality and adequacy of representation – precludes certification. *McLaughlin*, 522 F.3d at 221-22. Plaintiffs must also prove certification is warranted under at least one of the four subdivisions of Rule 23(b). *Id.* Here, plaintiffs seek to certify a class under Rule 23(b)(3).

### B.     Plaintiffs Have Failed To Satisfy The Requirements Of Rule 23(b)(3)

#### 1.     No Class Can Be Certified Under Rule 23(b)(3) Because Individual Issues Predominate Over Any Common Questions For Each Claim

Plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); FED. R.CIV. P. 23(b)(3). It is imperative to understand how the case will be tried. Plaintiffs must demonstrate that <u>each</u> <u>element</u> of the class claims can be proven with "classwide proof"–that is, proof that establishes the claims of all putative class members simultaneously. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 310-11 (S.D.N.Y. 2004). Where, after adjudication of the classwide issues, plaintiffs must still introduce substantial individualized evidence or argue a number of separate legal points to establish its claims, class certification is inappropriate. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003) ("any efficiency gained . . . will be lost when separate trials are required for each class member").

In assessing Plaintiffs' motion, the Court is not limited to the parties' pleadings, but

instead must critically analyze the substantive elements of Plaintiffs' claims and inquire into the proof necessary to satisfy the elements of those claims. *See Falcon*, 457 U.S. at 160; *Miles*, 471 F.3d at 27, 41 ("all of the evidence must be assessed as with any other threshold issue" and "the judge [must] resolve factual disputes.").

Here, essential elements of each of Plaintiffs' claims require proof unique to each purported class member. Because individual questions of law and fact swamp any common issues, class certification is inappropriate under Rule 23(b)(3). *See In re Currency Conversion*, 230 F.R.D. at 310.

### a.    Misrepresentation Claims Under The New York Consumer Protection Act Are Inherently Unsuited for Class Certification

To establish a violation of the New York Consumer Protection Act ("§ 349"), a plaintiff must prove that defendant's action was objectively misleading or deceptive, and that plaintiff suffered injury by reason of the action. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000); *In re Currency Conversion*, 230 F.R.D. at 310. Importantly, "the plaintiff must prove 'actual' injury to recover." *Id*. Thus, Plaintiffs must establish by classwide proof that Wendy's made objectively misleading or deceptive statements to each class member regarding Wendy's French fries, and that those statements caused injury to each class member.[2]

### i.    Individual inquiries are necessary to determine whether each potential class member saw or heard a misleading or deceptive representation

Customers who were not exposed to Wendy's trans fat claims cannot possibly maintain

---

[2] A properly defined class is imperative. *See, e.g., Amchem*, 521 U.S. at 620. For a class to be sufficiently defined, it must be precise—the class members must be presently ascertainable by reference to objective criteria. *People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 256 (S.D.N.Y. 2003). Because a significant number of customers who purchased French fries during the class period had no conception of the trans fat content, those proposed class members are not entitled to the relief sought. Additional individual inquiries are required to exclude those purchasers from the class definition, which will further compound the pre-existing manageability problems. For this reason alone, the proposed class may not be certified.

that they were misled by a Wendy's trans fat statement.  *See Solomon v. Bell Atlantic Corp.*, 777 N.Y.S.2d 50, 55 (1st Dept. 2004) (decertifying § 349 class due to "the uncontested fact that some subscribers saw none of the advertisements but learned of DSL through word of mouth.").  The *Solomon* plaintiffs could not point to a single statement that was undoubtedly seen by all DSL subscribers.  This, in and of itself, raised a host of individual questions related to whether each individual was reasonably misled.  *Id.*

Like *Solomon*, Plaintiffs cannot prove with classwide evidence that each potential class member saw or heard a statement by Wendy's regarding trans fat.  More importantly, Plaintiffs certainly cannot prove that all proposed class members saw or heard the <u>same</u> statement.  For example, McLawrence concedes she did not review <u>any</u> materials from Wendy's—including the June 6 press release—before she purchased Wendy's French fries.  Ex. 10, McLawrence Dep. at 80:21-82:20.  Similarly, Jernow testified that he does not recall how he became aware that Wendy's French fries did not contain trans fat.  Ex. 9, Jernow Dep. at 115:13-116:16.  If neither of the named Plaintiffs was exposed or cannot establish exposure to the representations upon which this case is based, other potential class members will be unable as well.  The Court is required to consider the issues from the perspective of the reasonable consumer <u>who witnessed the statements</u>.  *Solomon*, 777 N.Y.S.2d at 56.  While some potential class members may have received information about trans fats in French fries directly from Wendy's, the Court cannot presume that all did.  *See, e.g., Carnegie v. H&R Block*, 703 N.Y.S.2d 27, 29 (1st Dept. 2000) ("Nor can class certification be based on Block's advertising, since questions of whether each individual was exposed to, and influenced by, the advertising would predominate").

Plaintiffs' citation to trans fat-related information on certain Wendy's packaging also gains them no ground.  Pls.' Mem. at 3.  That some packages mentioned trans fat does not prove

the customer saw it,[3] much less that he or she saw it before purchasing the product.[4]  Given the countless reasons for purchasing French fries, it is simply impossible to educe what motivates a particular customer's purchasing decision absent individualized proof.  Ex. 1, Ugone Decl. at ¶¶ 34-45 and Exhibit 4 thereto.  Even if it were possible, however, one cannot be motivated by or "caused" to purchase a product by a statement one never saw or heard.

Similarly, individuals such as McLawrence, whose knowledge stems solely from third party representations, cannot be class members.  *Solomon*, 777 N.Y.S.2d at 55.  Wendy's is not liable under § 349 where an unrelated third party made representations to the consumer about Wendy's food.  *Id*.  Moreover, to the extent an individual heard Wendy's statements <u>and</u> inaccurate third-party statements, the jury will need to determine whether that unique package of information would have misled the reasonable consumer.  *Id.* at 56 ("Even assuming that all the members of the class saw the same advertisements, questions as to whether each individual was reasonably misled by them predominate, given the alternative sources of information about DSL service that each may have had.").  The litigation quickly spirals into a series of unmanageable mini-trials.  The predominance requirement was designed to avoid precisely this scenario.

Additionally, each class member must demonstrate not only that they were exposed to a Wendy's statement, but that they were exposed to the <u>same</u> statement.  *Id.* at 55 ("[C]lass certification is not appropriate where the 'plaintiffs do not point to any specific advertisement or public pronouncement by the [defendants] . . . <u>which</u> <u>was</u> <u>undoubtedly</u> <u>seen</u> <u>by</u> <u>all</u> <u>class</u> <u>members</u>.'"  (citing *Small v. Lorillard Tobacco Co*., 679 N.Y.S.2d 593, 600 (1st Dept. 1998))

---

[3] Plaintiffs' testimony underscores this point.  McLawrence admits she never saw any trans fat information on packaging, and Jernow claims to have seen the packaging on June 20, 2006, a full three months before Wendy's began using the advertisements.  Ex. 10, McLawrence Dep. at 82:7-16; Ex. 9, Jernow Dep. at 117:9-118:1.

[4] Though Jernow claims to have seen the advertisement three months before it existed, he describes having seen the advertisement post-purchase, "on my way out of the Boston store."  Ex. 9, Jernow Dep. at 117:19-118:1.

(emphasis added). Plaintiffs point to no representation that was undoubtedly seen by all class members. Indeed, even the named Plaintiffs fail to identify the same Wendy's statements.

Finally, under § 349 a plaintiff must also establish that a reasonable consumer would have been misled under the circumstances. *Solomon,* 777 N.Y.S.2d at 55. Consequently, even if Plaintiffs could show which class members received a Wendy's statement regarding trans fat, Plaintiffs cannot recover unless a reasonable consumer would have been misled under the circumstances. Given the varied content and timing of the alleged representations about Wendy's French fries, each putative class member must be examined to ascertain their level of exposure (if any) to and understanding of the alleged misrepresentations in order to determine whether a reasonable consumer would have been misled under the circumstances.[5]

> ### ii.    Plaintiffs cannot provide classwide proof that the alleged representations by Wendy's caused actual injury to each potential class member

Causation is also a fundamental element of Plaintiffs' § 349 claim. *Id.* Even if Plaintiffs could somehow demonstrate—with classwide evidence—that Wendy's made misleading and deceptive statements to each potential class member, the inquiry at trial would then turn to whether the statements caused actual injury to each potential class member. If the statements had no affect on an individual's purchasing decision, the causal link is broken and the claim, as to that proposed class member, fails.[6]

---

[5] Plaintiffs rely on *Dupler v. Costco Wholesale Corp.*, No. 06-CV-3141, 2008 WL 321776 (E.D.N.Y. Jan. 31, 2008) in which the Court certified a consumer class under § 349. That case is distinguishable because the allegations involved omissions equally applicable to all proposed class members, rather than misrepresentations, which are not suitable for class treatment because common legal and factual issues would not predominate. *Id.* at *12. Other cases cited by Plaintiffs suffer the same deficiency. *See In re Coordinated Title Ins. Cases*, No. 010764/2002, 2004 WL 690380, *7 (N.Y. Sup. Ct. Jan. 8, 2004) (granting class certification "because the allegations . . . involve[d] largely *omissions and not affirmative representations*, [therefore] no individual issues of what the defendants said will predominate.") (emphasis in original).

[6] Some individuals are simply unconcerned about trans fat content including, apparently, Plaintiffs. During the class period, both continued to purchase and consume French fries, as well as other foods, with trans fat levels

> **(1)    Plaintiffs' claim that Wendy's trans fat statements caused increased sales of French fries, at a premium price, can only be established with individualized proof**

To prevail on their theory that Wendy's statements caused demand to rise and therefore plaintiffs paid an artificially inflated price, Plaintiffs must demonstrate "loss causation."  They must show "the proximate causal link between the alleged misconduct and the plaintiff's economic harm."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 106 (2d Cir. 2007).

In *McLaughlin*, a recent Second Circuit decision that Plaintiffs inexplicably ignore, Plaintiffs were also required to demonstrate "loss causation."[7]  The *McLaughlin* plaintiffs attempted to establish loss causation the same way Plaintiffs seek to do so here: by alleging that misrepresentations caused consumers to pay a price premium.  The *McLaughlin* plaintiffs argued that the defendant's "misrepresentation that Lights were healthier led to an increased market demand for light cigarettes, which drove up the price of Lights.  Thus, plaintiffs contend that they paid more for Lights than they otherwise would have had the truth been known."  *McLaughlin*, 522 F.3d at 226.  But the Second Circuit unequivocally held that "establishing the first link in the causal chain—that defendants' misrepresentation may have caused in increase in market demand—would require individualized proof, as any number of other factors could have led to this increase."  *Id.*  Thus, causation could not be proven with classwide evidence.

Plaintiffs here advance precisely the same theory.  Pls.' Mem. at 19 ("Plaintiffs allege that all Class members were injured in the same way – by paying a premium for Wendy's French fries . . . .  [A]fter defendant's announcement that it was switching to non-hydrogenated cooking

---

higher than those contained in Wendy's French fries.  Ex. 9, Jernow Dep. at 100-103; Ex. 10, McLawrence Dep. at 52:15-54:18.

[7] Although *McLaughlin* involved a civil RICO claim and not a § 349 claim, both statutes require that the injury be "by reason of" the prohibited conduct.  *Compare* 18 U.S.C. § 1964(c) *with* N.Y. Gen. Bus. Law § 349(h);

oil . . . defendant increased the price it charged for French fries. At the same time, Wendy's same-store sales increased . . . as consumers switched to Wendy's based upon its representation."). Just as in *McLaughlin*, there is simply no way to ascertain what portion of the increased demand for French fries was allegedly caused by Wendy's trans fat statements and what portion was caused by other, unrelated causes. This must be established by individual proof, not classwide proof. Ex. 1, Ugone Decl. at ¶¶ 39-45.

Consumers choose Wendy's food for a litany of reasons—each of them unique and personal. *Id.* Trying to disentangle the many causes that combine to create overall demand is precisely the type of "unworkable difficult[y]" the Second Circuit warned against in *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 770 (2d Cir. 1994). Just as individualized proof would have been required in *McLaughlin* because of the varying degrees of influence the alleged misrepresentations about Light cigarettes may have had on an individual's purchase decision, *McLaughlin*, 522 F.3d at 226, individualized proof will be required here to ascertain whether the customer purchased French fries "by reason of" the trans fat advertisement, or for some other reason. Indeed, both named Plaintiffs readily admit the location of Wendy's restaurants was a contributing causal factor to the frequency of their purchases. Ex. 10, McLawrence Dep. at 41:15-17; Ex. 9, Jernow Dep. at 64:4-11.

*McLaughlin* also noted that after the truth about Light cigarettes became known, there was no appreciable drop in the demand for light cigarettes, and as a result, the argument that the misrepresentations caused the price to be inflated "fail[ed] as a matter of law." *Id.* at 227. Plaintiffs' argument here fails for the same reason. In November 2006, the widely-read *Consumer Reports* published an item (in print and on its website) questioning Wendy's claims

---

see also *Dungan v. The Academy at Ivy Ridge*, No. 06-CV-0908, 2008 WL 2058448, *5 (N.D.N.Y. May 14, 2008).

13

regarding trans fat levels.  *See* Ex. 8.  If Plaintiffs' theory is accurate and any increase in demand for Wendy's French fries after the press releases was attributable to Wendy's representations, there should have been a corresponding decrease in demand following the *Consumer Reports* item.  There was no such drop in demand.[8]  Consequently, Plaintiffs' argument fails here, just as it did in *McLaughlin*, "as a matter of law."

In short, "because factors other than defendants' misrepresentation may have intervened and affected the demand and price of Lights, and because determining the portion of plaintiffs' injury attributable to defendants' wrongdoing would require an individualized inquiry, plaintiffs cannot establish loss causation on a class-wide basis."  *McLaughlin*, 522 F.3d at 227.

> **(2)    Individual inquiries will be required to establish whether each plaintiff actually based their purchasing decision on Wendy's statements**

Consumers obtain information about products they purchase from a variety of sources—the internet; magazines; television advertisements; product reviews by independent parties; and recommendations from friends, relatives and coworkers, among countless others.  Ex. 1, Ugone Decl. at ¶ 35.  Indeed, courts recognize that consumer purchases implicate personal idiosyncratic choice.  *See, e.g., Freedman v. Arista Records, Inc.*, 137 F.R.D. 225, 229 (E.D. Penn. 1991) (decisions to purchase music recordings based on numerous individual factors); *Morgan v. Markerdown Corp.*, 201 F.R.D. 341, 348 (Dist. N.J. 2001) (individual reasons such as location, recruiting and recommendations drove decisions to enroll in trade school).  Consumers purchased Wendy's French fries for varied reasons.  Ex. 1, Ugone Decl. at ¶¶ 39-45.  Some

---

Thus, the discussion of loss causation in *McLaughlin* applies with equal force in this case.

[8] In fact, plaintiffs allege that Wendy's sales *increased* following the publication of the *Consumer Reports* item.  *See* Pls.' Mem. at 19 ("During the Class Period, Wendy's same-store sales increased month after month, even though Wendy's raised its prices twice more during the Class Period.").

potential class members may have been previous customers and enjoyed the fries, while others may have utilized the discount "Combo" meal package or had other reasons. *Id.* at ¶¶ 42-45. Many customers (such as Jernow) may have been motivated by restaurant location. *Id.* at ¶ 44(a); *see also* Ex. 9, Jernow Dep. at 64:4-11.

Before Wendy's can be liable for violation of § 349, potential class members must prove the Wendy's trans fat statements caused actual injury. The only way to determine whether each class member would not have made a French fry purchase absent the Wendy's statements— without improperly presuming causation—is via individual inquiry. Plaintiffs have not presented any feasible alternative way to do this in the context of a class action involving all New York state customers, even though Plaintiffs clearly carry that burden. For these reasons alone, class certification should be denied.

> **(3)    Individualized proof is needed to determine whether proposed class members had full knowledge of the facts before purchasing Wendy's French fries**

The claims of some proposed class members, including both of the named Plaintiffs, may be barred, in whole or in part, under the "voluntary payment doctrine," which precludes recovery where a claimant voluntary made payment with full knowledge of the facts. *See Newman v. RCN Telecom Services, Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y 2006). This defense is specific to each particular class member. Every class member who was aware of the media coverage challenging Wendy's trans fat statements, such as the November 2006 *Consumer Reports* item or the existence of this lawsuit prior to purchasing Wendy's French fries, is potentially subject to the voluntary payment doctrine defense. Likewise, every class member who was aware that Wendy's suppliers had not yet switched to non-trans fat par-fry oil—a fact prominently disclosed in Wendy's July and August 2006 press releases—is also subject to this defense. Wendy's has

the right to determine which potential class members' claims are barred by this affirmative defense and no adequate classwide method exists to make this determination.

### iii.    Plaintiffs do not have classwide proof of injury

To prevail under § 349 "the plaintiff must prove 'actual' injury to recover." *In re Currency Conversion*, 230 F.R.D. at 310. This Court has already noted that Plaintiffs' injury claims in this case are "weak." Mem. Order (Dkt. 23) at 6. Though Plaintiffs' theory of liability has been a moving target throughout the litigation, what has remained clear from its inception is that they cannot prove actual injury, and they certainly cannot prove injury via class wide proof.

Despite Plaintiffs' inability to state simply and clearly the alleged injury, it appears to be that individuals paid a premium for French fries that in fact were not what they believed them to be. What is clear, however, is that whether a particular class member paid a premium is not subject to class wide proof. Ex. 1, Ugone Decl. at ¶¶ 25-32. Wendy's stores in New York are made up of 67 company stores and 156 independently owned franchise stores. Wendy's controls the prices charged by its company-owned stores, but Wendy's does not control what prices are charged by franchisees. Ex. 7, Minton Dep. at 32:19-25. In addition, Wendy's pricing strategy acknowledges that individual markets may have unique circumstances that warrant unique pricing action for certain company stores. *Id.* at 30:2-13. Thus, in order to substantiate Plaintiffs' premium claim, individual inquiries will be required to determine from what store the alleged purchases were made and at what price the French fries were sold. Moreover, although Wendy's proposed a $.10 price increase to its company stores in July 2006 for several menu items, only the price of medium and large size French fries was increased.[9] Exhibit 11 to Decl.

---

[9] The suggested increase in pricing of French fries in July 2006 was not premised, in whole or in part, on the switch to non-hydrogenated in-store cooking oil. Ex. 7, Minton Dep. at 89:14-89:18.

of Michael Reese in Supp. of Pls.' M. for Class Certification at 19:22-20:6. Thus, an additional individual inquiry will be what size French fries each class member purchased. These individualized inquiries are essential to prove the alleged "actual injury" and because Plaintiffs' claimed injury cannot be established with classwide evidence, class certification must be denied.

**b.    Plaintiffs Cannot Provide Classwide Proof Of A Breach of Implied In Fact Contract**

To establish a breach of an implied in fact contract, Plaintiffs must prove: "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." *Macaluso v. U.S. Life Ins. Co.*, No. 03 Civ. 2337 (GEL), 2004 WL 1497606, *3 (S.D.N.Y. July 2, 2004) (citing *Furia v. Furia*, 498 N.Y.S.2d 12, 13 (2d Dept. 1986)). Because Plaintiffs cannot prove these elements without individualized proof, Plaintiffs cannot demonstrate common issues would predominate.

**i.    Plaintiffs cannot show by classwide proof that a valid classwide contract existed**

An implied in fact contract exists <u>only if</u> both parties mutually assent to the essential terms of the contract. *Russo v. Banc of America Securities, LLC*, No. 05 CV 2922 (DAB), 2007 WL 1946541, *4  (S.D.N.Y. June 28, 2007). Here, an essential term of the alleged contract is that the French fries contained  a certain amount of trans fat. Pls.' Mem. at 20. If a purchaser was not at least *aware* of the alleged misrepresentations, the level of trans fat as represented could not possibly have been a contract term to which they assented. The mere purchase of French fries is insufficient to establish assent to an uncommon term such as trans fat content because it demonstrates nothing as to whether the purchaser was aware of the alleged misrepresentations. Customers were not offered a choice between "trans fat French fries" and "non trans fat French fries" such that their intent to be bound can be adduced from their purchasing decision. Instead, a consumer's purchase of French fries is attributable to a wide

17

variety of motivations.  Ex. 1, Ugone Decl. at ¶¶ 39-45.  Because Plaintiffs cannot establish the required mutual assent absent individualized proof, certification on this claim is inappropriate.

Plaintiffs' reliance on *Gross v. Ticketmaster*, No. 600504/02, 2004 WL 2339808 (N.Y. Sup. Ct. 2004), where the court certified a class of concert ticket holders whose views of the concert were obstructed, is misplaced.  Pls.' Mem. at 20.  Every purchaser of the concert tickets at issue in *Gross* necessarily understood and expected as an implicit term of the contract that they would be able to view the concert.  The same cannot be said for purchasers of French fries, many of whom had zero knowledge and zero expectation regarding the trans fat content of Wendy's French fries.  Ex. 1, Ugone Decl. at ¶¶ 34-38.  Stated differently, many purchasers had no knowledge of the very term Plaintiffs allege Wendy's breached, and the only method to determine that knowledge, if any, is by individual inquiries of purported class members.

### ii. Damages for breach of implied in fact contract cannot be proven by classwide proof

Plaintiffs cannot establish any damages for "premium pricing" absent proof that each franchisee and every company-owned restaurant raised its prices, that the price increase stemmed from Wendy's statements regarding trans fat in French fries, and that the newly raised price constituted a premium compared to other fast-food outlets in the immediate market.  Tellingly, Plaintiffs do not even attempt to demonstrate how they would establish these claimed damages for the proposed class.  Rather, their argument merely presumes:  "[if Wendy's breached] then each Class member who purchased (and therefore paid a premium) for trans-fat French fries was damaged."  Pls.' Mem. at 21.  But the proposed class suffered damages only if they were, in fact, charged a premium.  Notably, neither of the named Plaintiffs claims to have suffered any monetary injury.  Ex. 9, Jernow Dep. at 140:2-5; Ex. 10, McLawrence Dep. at 84:17-22.  As inconvenient as it may be, at trial Plaintiffs will be required to prove, not merely allege, a

"premium." As set forth in Section B.1.a.ii above, Plaintiffs cannot establish actual injury with classwide proof; thus, class certification on the implied contract claim must also be denied.

### c.    Plaintiffs' unjust enrichment claims cannot be proven by classwide proof

An unjust enrichment claim requires Plaintiffs to prove unjust retention of a benefit by Wendy's to the detriment of the proposed class, against equity and good conscience. *See, e.g., Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Because unjust enrichment is an equitable remedy, courts recognize that these claims must be evaluated on the particular facts and circumstances of each case. *See, e.g., Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 500-01 (S.D. Ill. 1999); *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, n.25 (S.D. Ala. 2006) (noting that plaintiffs' attempt to certify a class seeking unjust enrichment is "puzzling" given the fact-specific nature of the claim).

In *White*, plaintiff sought certification of warranty and unjust enrichment claims alleging that Microsoft's Xbox 360 was defectively manufactured. *Id.* at 1121. Determining the elements of this claim required a consideration of plaintiff's state of mind. *Id.* at 1132 n.25. To avoid this obstacle, plaintiff argued Microsoft's act of knowingly marketing defective Xbox 360s was not something each class member could know before purchasing the product, and therefore the court need not inquire into what each potential class member knew prior to making the purchase. *Id.* The court disagreed, holding that plaintiff's evidence "underscores the need for individualized inquiry into state of mind issues as to the unjust enrichment claim, and constitutes a formidable roadblock to any Rule 23 certification of that cause of action." *Id.*

Here, too, Plaintiffs base their claim on Wendy's misrepresentations. Yet where unjust enrichment is alleged to be the result of misleading statements, certification must be denied because the Court would need to inquire into whether each potential class member knew of the

alleged trans fat statements before purchasing French fries. *See Dungan*, 2008 WL 2058448 at *16 (denying class certification with respect to unjust enrichment because it would require "individualized proof as to each plaintiff's situation and an individualized analysis of 'equity' and 'good conscience,'"); *In re Canon Cameras*, 237 F.R.D. 357, 359-60 (S.D.N.Y 2006). The court in *Canon Cameras* noted that to prevail on an unjust enrichment claim, plaintiffs must establish that the "benefits received were less than what these purchasers bargained for." *Id.* at 359. The same is true here. Plaintiffs cannot establish the proposed class received "less than what they bargained for" unless they can establish that the individual purchasers believed they were receiving something that they did not receive. This critical element of Plaintiffs' unjust enrichment claims cannot be established with classwide evidence.

> **d.    Calculation of damages will require extensive individualized determinations**

While the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification, it is a factor in determining whether issues susceptible to generalized proof outweigh individual issues. *McLaughlin*, 522 F.3d at 231. In this case, factors peculiar to each class member's personal circumstances affect calculation of their claimed damages. As a result, individual inquiries will be required to ensure that any damage award accurately reflects the number of class members actually injured and bears a relationship to the amount of economic harm actually caused. Because these individual issues can be resolved only through individual proof, class certification is improper. *See Leider v. Ralfe*, 387 F. Supp. 2d 283, 299 (S.D.N.Y. 2005) (noting "plaintiffs have not proffered a feasible method of damage calculation that is based on something more than conjecture and would have uniform application so that individual issues with respect to damages do not predominate.").

> **2.    Plaintiffs Have Failed To Demonstrate That Class Certification Is Superior To Other Methods Of Adjudication.**

Rule 23(b)(3) also requires Plaintiffs to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Four factors determine whether a class action is superior:

> 1.   Interest of class members in individually controlling the prosecution or defense of separate actions;
>
> 2.   Extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> 3.   Desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> 4.   Difficulties likely to be encountered in managing a class action.

Plaintiffs wholly ignore the final and most important factor in the superiority analysis – manageability. This case presents irreconcilable manageability problems due to the numerous individual questions of fact highlighted above requiring evidence from each potential class member. Plaintiffs' inability to demonstrate how this case can be managed in light of these issues provides sufficient grounds alone to deny certification. *See, e.g., In re LifeUSA Holding Inc.,* 242 F.3d 136, 148 (3d Cir. 2001) (denying certification of fraud and unjust enrichment claims due to difficulties of managing individualized factual and legal issues); *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 653-55 (C.D. Cal. 1996) (denying certification of fraud claim due to problems managing individual issues of reliance, injury and damages).

Further, for many proposed class members, a separate action under § 349 would be superior to a class action. In an individual action under § 349, each successful plaintiff is entitled to recover $50 even if his or her actual damages are lower. N.Y. Gen. Bus. § 349(h). In a class action, however, a plaintiff's recovery under § 349 is limited to actual damages by application of § 901(b) of the New York Civil Rules. *See, e.g., Alicea v. Circuit City Stores, Inc.*, No. 07 CV

6123 (DC), 2008 WL 170388 (Jan. 22, 2008); *Ridge Meadows Homeowners' Ass'n, Inc. v. Tara Dev. Co., Inc.*, 665 N.Y.S.2d 361 (4 Dept. 1997). Thus, individuals whose actual damages total less than $50 (presumably most, if not all of the proposed class) are distinctly <u>worse off</u> in a class action. Plaintiffs' motion completely ignores that a class action is not superior for those customers, if any, who, unlike Jernow and McLawrence, might have a valid complaint.

### C.    Plaintiffs Have Failed To Meet The Requirements Of Rule 23(a)

Plaintiffs have failed to carry their burden of meeting the requirements of Rule 23(a), except for numerosity, which Wendy's does not contest.

#### 1.    Plaintiffs' Claims Present Few Common Questions Of Law And Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must establish a common factual nexus between the alleged misconduct and the putative class members. *See, e.g., Lewis Tree Service, Inc., v. Lucent Techs. Inc.*, 211 F.R.D. 228, 232 (S.D.N.Y. 2002). As discussed above, Plaintiffs' claims are plagued by numerous individual questions. Plaintiffs have not addressed how even one issue of law or fact will be common to the proposed class when Plaintiffs must establish the particular circumstances under which each proposed class member purchased Wendy's French fries starting in late August 2006. Rather, Plaintiffs make only highly generalized and conclusory allegations about Wendy's conduct. Pls.' Mem. at 15. Plaintiffs have failed to meet the commonality requirement.

#### 2.    Jernow's And McLawrence's Claims Are Not Typical

A class representative's claims or defenses must be typical of the class claims or defenses. Fed. R. Civ. P. 23(a)(3). Plaintiffs must be members of the proposed class, have interests coextensive with and not antagonistic to the interests of the class, and have suffered the same injury as the proposed class members. *See, e.g., Falcon*, 457 U.S. at 156. The presence of a defense peculiar to the named plaintiff or a small subset of the proposed class may destroy

typicality. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2nd Cir. 2000); *Spann v. AOL Time Warner, Inc*., 219 F.R.D. 307, 316 (S.D.N.Y. 2003).

Jernow and McLawrence are atypical because they concede that they did not suffer the injury supposedly suffered by the putative class. Indeed, both disclaim any monetary injury at all, and neither said they would have purchased the French fries for a lesser amount of money had they known the "truth." Ex. 9, Jernow Dep. at 140:12-18; Ex. 10, McLawrence Dep. at 85:17-21.

Jernow and McLawrence are also atypical because their claims are subject to unique defenses that will become the focus of the litigation. Both Jernow and McLawrence allege they were misled and that they would not have purchased French fries "had the true amount of trans fats been disclosed." *See* 2d Am. Compl. at ¶¶ 7, 8. McLawrence testified that the one and only time she heard anything regarding Wendy's and trans-fat, however, was <u>not</u> <u>in</u> <u>an</u> <u>advertisement</u> <u>or</u> <u>statement</u> <u>of</u> <u>any</u> <u>kind</u> <u>by</u> <u>Wendy's</u>, but rather what she believed to be a news item on the radio. Ex. 10, McLawrence Dep. at 69:19-70:8. She never saw any nutritional posters, print media, or any advertisements on television or on Wendy's website or packaging. *Id*. at 80:21-82:21. A plaintiff cannot be "misled" under § 349 by a representation they never saw or heard. *Solomon*, 777 N.Y.S.2d at 55; *see also Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 114 (N.D. Ill. 1993) (typicality not established when plaintiff's actions were not based on defendant's alleged misrepresentations).

Jernow's claim rings equally hollow. Jernow could not remember how he learned of Wendy's switch to non-hydrogenated oil: possibly through a radio advertisement, possibly from print media or a nutritional poster, and possibly from packaging following his June 2006 purchase. Ex. 9, Jernow Dep. at 127:11-128:2. Setting aside Jernow's inability to identify the

representations he might have observed or heard, Jernow claims to have purchased French fries from Wendy's on only three occasions after June 2006, none of which provide a viable basis for his claim. The first purchase was not in New York, and to prevail under § 349, a plaintiff must establish the deceptive practices alleged took place in New York. *See Leider,* 387 F. Supp. 2d at 294. The second purchase was in "late July or early August," which was before Wendy's switched the in-store cooking oil. The third purchase was in 2007, <u>after</u> the *Consumer Reports* item was published and <u>after</u> <u>he</u> <u>filed</u> <u>his</u> <u>complaint</u>, clearly making him subject to the voluntary payment doctrine. *See, e.g*., *Dillon v. U-A Columbia Cablevision of Westchester*, 100 N.Y.2d 525, 526 (N.Y. 2003) ("The [voluntary payment] doctrine bars recovery of payments voluntarily made with full knowledge of the facts.").

Further, regardless of the cause of action, Plaintiffs must show a causal connection between the asserted injury and the challenged action of the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And Plaintiffs must show it is likely, rather than speculative, that a favorable decision will redress their injury. *Id.* at 561. If anything, the named Plaintiffs "appear to have demonstrated that there is no typical plaintiff. The record reflects differences among the individual plaintiffs as to which advertisements they saw, whether they saw any ads or obtained information . . . from other sources . . . [and] the nature and the extent of their injuries, and the damages they claim." *Solomon*, 777 N.Y.S.2d at 57. Without injuries caused by Wendy's, Plaintiffs cannot be typical of the purported class. *Lujan,* 504 U.S. at 563.

### 3.    Jernow And McLawrence Are Not Adequate Representatives

A class cannot be certified unless "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy "inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent."

*Amchem*, 521 U.S. at 594. The Court cannot presume adequacy; Plaintiffs must prove that they and their counsel are adequate. *See Spann*, 219 F.R.D. at 315.

For the same reasons that they lack typicality, Plaintiffs are also inadequate class representatives. A class action binds absent class members whether the outcome is favorable or adverse. Due to the unique defenses Wendy's may assert against Plaintiffs, including the voluntary payment doctrine and their admissions that they were not injured, allowing Jernow or McLawrence to serve as class representatives places the claims of potential class members at significant risk. In addition, as discussed above some potential class members could recover $50 under § 349 if they pursued valid individual claims. Plaintiffs are not adequately representing those potential class members, who will recover little or nothing here, yet will be bound by this Court's judgment.

Furthermore, by selecting named plaintiffs who are subject to individual defenses, Plaintiffs' counsel have likewise demonstrated their inadequacy. *Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 118-20 (N.D. Ill. 1993) ("If we recognize that counsel have a lot to do with assembling ... a class action lawsuit, including finding plaintiffs, then class counsel ought to do a good job of it."); *see also* Ex. 9, Jernow Dep. at 25:13-26:9 (testifying that the lawsuit was not his idea and his involvement stemmed from his friendship with his counsel, Kim Richman) and Ex. 10, McLawrence Dep. at 25:21-27:8 ███████████████████████

█████████████████████████████████████████

## IV.    **CONCLUSION**

For the above reasons, and in the interests of justice, Plaintiffs' motion to certify a class under Federal Rule of Civil Procedure 23 should be denied.

**RESPECTFULLY SUBMITTED** this 19th day of June, 2008.


By:    _____/s/_____

Akin Gump Strauss Hauer & Feld LLP
Thomas P. McLish
James J. Scheske
Troy D. Cahill
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel:  (202) 887-4000

*Attorneys for Defendant Wendy's International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing **Defendant's**

**Opposition to Plaintiffs' Motion for Class Certification** to be served this 19th day of June,

2008, by ECF notification and e-mail to the following persons:

Michael R. Reese
Kim E. Richman
Reese Richman LLP
230 Park Avenue, 10th Floor
New York, NY 10169

Lee A. Weis
Rebecca Tingey
Dreier LLP
499 Park Avenue
New York, NY 10022

COUNSEL FOR PLAINTIFFS

_____/s/_____
Troy D. Cahill